The opinion of the Court was delivered by
Duncan J.
This indictment consisted of nine Courts. The jury have found separate verdicts.
On the first, which was for conspiring to sell lottery tickets, in a lottery not authorised by the laws of this Commonwealth, the jury have found the defendants guilty, so far as relates to a, ticket. On the second, which was for a conspiracy to advertise, not guilty against both. On the third count against both, for selling lottery tickets not authorised by the laws of this Commonwealth, guilty of selling a lottery ticket. On the fourth, for advertising such lottery tickets, not guilty. On the fifth, against Gregory for selling such lottery tickets, guilty as to one ticket. On the sixth, against Gillespie for selling such lottery tickets, guilty as to. one ticket. On the seventh, for advertising, against Gregory, not guilty. On the eighth, for advertising, against Gillespie, not guilty. On the ninth, for selling a lottery ticket set out in words and figures, guilty against both.
The defendants have moved for a new trial, and in arrest of judgment. The motion in arrest of judgment, I will first consider. The reasons in arrest of judgment, are,'that the offence, in the 3d, 5th, and 6th, counts, is not laid with sufficient certainty; that, the offences could not be laid in the same indictment; that the defendants could not be indicted jointly and severally in the same indictments, f do not think it necessary to set out the ticket or tickets ; but the indictment should state, what tvas the name of the lottery, and the number,of tickets sold, where the charge is for advertising or selling. For the charge must contain a certain des *475 cription of the crime of which the defendant is accused, and a statement of the facts by which it is constituted, so as to identify the accusation, lest the grand jury should find a bill for one offence, and the defendant be put on his trial for another, without any authority ; so that the Court may see a definite offence on record, that they may apply the judgment, and the punishment which the law prescribes and so that the defendant’s conviction or acquittal may insure his subsequent protection; that he may be enabled to plead it in bar of any subsequent proceedings. The indictment ought to state the fact, with as much certainty as the nature of the crime will admit. There are cases, consisting of a series of transgressions, which constitute the offence, a being a common scold or barretor; keeping a disorderly house, &c.,' where it must be charged generally. An indictment ought, at least, to be as certain as a declaration. An indictment for fishing in a fishery, and taking away divers fish, was bad at common law. Key v. Marshal, 2 Keb. 594. For it is material that the defendant should be apprised of the charge against him, in order to prepare for his defence; and it is clear that an indictment for stealing divers fish, not specifying the number, would be insufficient. Paley on Convictions, 82. An indictment for engrossing a great quantity of straw and hay, without mentioning the quantity, quashed for uncertainty. Cro. Car. 380. 1 Stra. 497, King v. Gibbs. Indictment for selling divers quanties of beer in unlawful measures, is too general; for the Court cannot form a judgment in what degree to punish the defendant. In trespass, the number and nature of things ought to be mentioned. Playter's Case, 5 Rep. 34.
A conviction on Stat. 43. El. C. 7, for cutting down divers lime trees, quashed for uncertainty; the number not being set out. Queen v. Burnaby, 2 Ld. Raym. 900. In trespass for taking divers goods, not saying what goods, judgment arrested after verdict, for uncertainty in not specifying what the goods were, so that the recovery could not be pleaded in bar of another action brought for the same goods. Wiat v. Essington, 2 Ld. Raym. 1410; and see 2 Saund. notes, 310. The third, fifth, and sixth counts, cannot be supported, and judgment on them must be arrested. In Stewart v. The Commonwealth, a judgment on an indictment for stealing *476 sundry promissory notes for the payment of money of the value of eighty dollars, of the goods and chattels of A., was reversed for the vagueness and uncertainty, 4 Serg. & Rawle, 194.
But the same reason does not apply to the first count, for the conspiracy itself is the crime. It is different from an indictment for stealing, or action for trespass, where the offence consists of an act done, which it is clearly in the power of the prosecutor to lay with ceitainty. The conspiracy here was, to sell prohibited lottery tickets, any that he could, sell j not of any particular prohibited lottery* but of all., The con - spiracy was the gravamen, the gist of the offence.
These several charges, as laid in the indictment, are different modes of laying the same offence. But if the offences were different, separate offences, it is no objection either on demurrer or in arrest of judgment, that separate offences of the same nature, are joined against the same defendant. Even in case of felony, though it be true that no more' than one offence should regularly be charged, in one indictment, and that the Court would quash the indictment before plea, or, if on the trial, the Court should think it might confound the prisoner, they may exercise a discretion in compelling the prosecutor to elect on which charge he will proceed, yet even in felonies, there is no objection to the insertion of several distinct offences of the. same degree, though committed at different times, in the same indictment against the same offender * and it is no ground of demurrer, or in arrest of judgment, and counts, where offences are of the same nature, counts at common law, and on a statute, may be joined, 1 Ghitty G. L. 175. In misdemeanor, no objection can be made to joining several in the same indictment in any stage of the proceeeding. 2 Burr. 984. Nor does it form any objection, that several are joined in the same indictment, for the same act. For though torts are in their nature several, and each one must answer for his own independent crime, yet when the act admits of the agency of several, as assault and battery, or libel, they may be indicted jointly or severally. Not so of perjury, because the assignment must be of the very words uttered, and the words of one cannot be applied to another ; or where the criminality arises in consequence of some personal disqualification, as for exercising a trade not *477 having served a due apprenticeship. Nor is the objection maintained, that several persons could not be severally in-dieted in the same bill for separate offences.. For though it might be in the discretion off the Court, to quash such indictment, yet it cannot be taken advantage of in arrest of judgment. For.they are considered as several' indictments in point of law. Ld. Hale, 2 H. H. P. C. 174, says, “ it is in common experience at this day, that twenty persons may be indicted for keeping disorderly houses, and they are duly convicted on such indictments ; for the word separalite makes the several indictments.” The first and ninth counts-are good counts, and judgment should be rendered on, them.
But there is a motion for a new trial, on the first, as being a verdict against evidence, and on the ninth on account of the variance between the ticket described- in the indictment, and that given in evidence. -The evidence was, that a. lotlery office was kept in a house .rented by Gillespie in this city, for several years, under a sign in the name of Gillespie's lottery office ; that Gregory, a young lad, acted as his servant, or agent in that office, and sold the ticket produced in evidence, a New York literature lottery ticket, and indorsed in the name of Gillespie; a lottery, not authorised by the laws of this Commonwealth;' that Gillespie occasionally visited Philadelphia. I did not instruct the jury, that Gillespie was criminally answerable for the act of his agent or servant, but I left them to decide, whether, from the whole body of the evidence, Gillespie was concerned in the sale of this ticket. The house his; the boy conducting business for him vas a lottery broker,'under his-sign ; selling this very ticket as his agent, and in his name. These were circumstances, from which the.jury might infer his participation in the. sale of this ticket; more especially as, if the boy had been employed as his agent to sell tickets authorised by the laws of this State, and not tickets prohibited, a production of his books would establish his innocence. That criminality, even in acts of the blackest dye, might be made out by circumstantial evidence. I put to the jury as examples, libels sold by a child in the shop of a printer ; tippling houses, liquor sold by a boy; bawdy houses, where the keeper kept out of view herself, though she was the owner of the house ; and I did put it to the jury'as a case'in which the evidentia rei, the *478 res ipsa loquitur, might afford satisfactory evidence of the participation of Gillespie. But it was for them to draw their own conclusion of participation or not. .If they found he had not participated in the transaction, they were instructed to acquit both, as to the indictment for conspiracy, if otherwjge^ to They have been convicted,and to my entire satisfaction. For the law would be a dead letter—we would become the laughing stock of our sister'States, either for the inaccuracy and little foresight of our law makers, or for the imbecility of those employed in the administration, if such a procedure as this was not brought within the law, if our neighbours from New York or Baltimore, could levy a revenue in-this State, by the employment of a child or a slave. It makes no difference where Gillespie resided, if he conspired to sell New York lottery tickets in Pennsylvania, with his agent, and the agent effected the act, the object of unlawful conspiracy ; he is answerable criminally to our laws. In this offence, there is no accessary. It must be recollected, the conspiracy is a matter of inference, deducible from the acts of the parties accused, done in pursuance of an apparent criminal purpose, in common between them, and which rarely are confined to one placej and if the parties are linked in one community of design, and of interest, there can be no good reason,' why both may not be tried, where one distinct overt act is committed. For he who procures another to commit a misdemeanour, is guilty of the fact, in whatever place it is.committed by the procuree. For if Gillespie was not accountable to our laws, then this offence would within our State be committed by him with impunity. For that consequence must follow, from its being held to be no crime in him, residing in New York, to procure the selling of lottery tickets in Pennsylvania, and the argument must rest on the position, that he owed no obedience to these laws, and had been guilty of no offence in contravening them.
This count was not abandoned on the trial on the part of the State. I do not precisely recollect, whether the gentlemen who conducted the prosecution, in stating the testimony, applied it to each count. Nor was there any occasion for this : for it equally went to prove every count in the indictment, as it did to any one. But I well recollect, there was an address *479 ic the Court on the insufficiency of this count. I am of opinion, and in this, every member of the Court agrees, that the verdict was not contrary to the evidence.
On the variance between the ticket described in the ninth count, and the ticket given in evidence; on very full consideration, 1 am of opinion, I decided erroneously. I was led into error by not discriminating sufficiently between allegations of description and those of substance between pleas in abatement, and questions of identity, and matters of literal description ; and confess, I was carried away by the idem so-nans, by the sound, as I must say, rather than by the real substance of the rule. Where, the prosecutor has undertaken to set oiit the lottery ticket, literatim, in words and figures following, this imports a tenor—a transcript, and implies the very same. Where a letter, omitted or changed, makes another word, though if be insensible, the variance is fatal. Queen v. Drake, 1 Salk. 660. The case of Williams v. Ogle, 2 Str. 889, is the only case to be found, where on mil tiel record, the change of a letter in a name, which did not alter the sound, as Segrave and Seagrave, was not held to be a fatal variance. 2 Str. 889. But, it is but a short statement of three lines, and the reporter adds a queere tamen, where the party has something else to go by, than the sound. It is true, Chitty, in his Criminal Law, 1 Chitty, 284, gives credit to this case, which the reporter, himself, had discredited. The sound in names, is what governs in cases of pleas of misnomer, questions of identity; there, it does not depend on the omission of a letter making another word, but another sound; for I think it has been determined that in these cases, Shakespear, Shackspere, are the same, because idem sonans. But if you omit the s in the middle, and give it another sound, there is a failure, as Shakepear. Burrall, Bur-rill, Burrell, are certainly idem sonans, and so is Bur-well; but I do not suppose, that in an indictment for forgery, setting out the instrument in hcec verba, that stating it to import to have been given by Burrill, would be supported by a paper, signed Burwell; now, the idem sonans must hold in every case of description, or there is nothing in it. Would it do in Leigh and Lee, Caldcleaugh and Calclew, Duncan and Dunkin ? Would it do in Tallifer for Taliafero, Chum, ley for Cholmondely?
*480 Sound may be the substance of a name, and when it is a matter of substance, it might hold, like any other allegation of substance; but sound is not a matter verbatim et literatim. name js a WOrd, and in undertaking to set out the name literatim it was not a vox et preterea nihil. Different lettgrs wjjj make different names, though the sound be the same. The word would then be a different word—another word; which in all cases of description, makes the variance fatal. Had this been set out in the manner following, the variance would not have been fatal; but when the phrase by legal intendment professes an exact recital, as here in the words and figures following, all the cases seem to require a literal precision, unless where it does not change one word for another. The verdict on the last count ought not to stand, but on the Attorney General entering a nolle prosequi. on that count, I can see no difficulty in entering judgment on the first count, as the verdict is separate. I see nothing to prevent a nolle prosequi on the ninth, at any time before judgment, for the ticket was proper evidence on that count. There is nothing in the objection, as it relates to the uncertainty in the verdict. The verdict, in making up the record, would stand, that the defendants and each of them were guilty in manner and form, as they stood indicted on each count.