**CONTE & COMPANY, INC., Plaintiff,**

v.

**Robert T. STEPHAN, Attorney General of the State of Kansas, Defendant.**

No. 88–4033–R.

United States District Court,
D. Kansas.

May 3, 1989.

Randy L. Baird, Topeka, Kan., Frank J. Shannon, III, Henritze & Shannon, Atlanta, Ga., for plaintiff.

Nancy L. Ulrich, Asst. Atty. Gen., Topeka, Kan., for defendant.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

Plaintiff brings this action seeking declaratory relief against investigations by the defendant, the Attorney General for the State of Kansas, into its business activities within the State of Kansas. Plaintiff contends that the actions of the defendant in applying the provisions of the Kansas Consumer Protection Act (KCPA), K.S.A. 50–623 *et seq.*, to its direct mail business are unconstitutional. This matter is presently before the court upon cross-motions for summary judgment. The court has carefully reviewed the matters submitted by the parties and we are prepared to rule.

The facts that form the background of this litigation are generally not in dispute. Plaintiff is a Georgia corporation which engages in direct mail marketing. Plaintiff solicits customers exclusively through the use of the United States Postal Service. Plaintiff's mailing of certain postcards to Kansas residents generated several complaints to the defendant. The postcards congratulated Kansas residents on having been selected "to receive one of 17 valuable gifts—a NATIONAL GIFT HOUSE EXTRAVAGANZA!!!" These gifts included such items as an automobile, a color television, a video camera, cash and, most importantly, a "holiday vacation for two." In order to receive their gifts, the Kansas residents were required to pay a $17.00 fee "to cover processing and handling of [the] award package." The recipients of the postcards were not notified of the probabilities associated with the award of any of the enumerated gifts. The defendant thereafter conducted investigations of the plaintiff's activities. Following the completion of these investigations, defendant threatened to bring an action under the KCPA in Kansas state court against the plaintiff for injunctive and monetary relief unless the plaintiff entered into a consent decree. The consent order required the defendant to discontinue sending the postcards to Kansas consumers and to pay fees and penalties in the amount of $40,000.00. Plaintiff responded by filing this action. Defendant subsequently filed an action in state court alleging that the plaintiff violated the KCPA by the following acts and practices, which are deceptive and unconscionable: "a) The Defendant offers nothing of value to the consumer; b) The Defendant's advertisement appears to be a notice that the consumer has won a 'valuable gift'; c) The Defendant requires payment of a $17 gift 'processing and handling' fee before telling the consumer what he or she has 'won'; d) The consumer who pays the $17 is told he or she has won a 'Holiday Vacation for Two'; e) The 'Holiday Vacation for Two' appears to be the only prize actually awarded from all those listed on the advertisement; f) The 'winner' of the 'Holiday Vacation for Two' would be required to pay for his or her own transportation and lodging expenses; and g) The odds of winning the listed prize are not given in the advertisement."

Plaintiff has three prongs to its attack on the actions of the defendant. First, plaintiff argues that the application of the KCPA to mailed materials is preempted by Article I, section 8, clause 7 of the United States Constitution and provisions in the United States Code allowing the United States Postal Service to investigate and act on allegedly fraudulent or deceptive acts being carried on through the mails. Second, plaintiff contends that the application of the KCPA to its activities violates its First Amendment rights to engage in commercial speech. Lastly, plaintiff asserts that the application of the KCPA to its activities violates its due process rights under the Fifth and Fourteenth Amendments.

Before we consider the arguments of the parties, we shall briefly examine the laws applicable to this action. The United States Constitution provides in pertinent

part that "[t]he Congress shall have Power ... To establish Post Offices ..." U.S. Const. art. I, section 8, clause 7. Congress has passed in Title 39 a number of statutes to implement this constitutional provision. Several of the statutes have some importance here. Nonmailable matter may not be deposited in the United States mail. 39 U.S.C. § 3001. The use of the United States mail to conduct a lottery, or to engage in a scheme to obtain money by means of false representations is prohibited. 39 U.S.C. § 3005. The United States Postal Service may order the return of such mail and require a person to cease and desist when it has satisfactory evidence that a violation has occurred. *Id.*

The KCPA prohibits suppliers from engaging in deceptive acts or practices in Kansas consumer transactions. K.S.A. 50–626. The KCPA further prohibits any supplier from engaging in any unconscionable act or practice in Kansas consumer transactions. K.S.A. 50–627. The stated purpose of the KCPA is, in part, to "protect consumers from suppliers who commit deceptive and unconscionable practices." K.S.A. 50–623(b). The Kansas Attorney General is responsible for enforcing the KCPA and acting upon consumer complaints. K.S.A. 50–628. The Attorney General is empowered to investigate suppliers who violate the KCPA and to file actions in state court to obtain declaratory or injunctive relief. K.S.A. 50–631, 50–632.

### I.

Plaintiff contends that the federal government has the sole and exclusive power to regulate the communications contained in the United States mail and that any effort by the State of Kansas to regulate mail matters would conflict with the powers of the federal government. Plaintiff's argument is based upon the constitutional provision which provides that "[t]he Congress shall have Power ... To establish Post Offices ...", U.S. Const. art. I, § 8, clause 7; and (2) the statutes and regulations which prohibit the mailing of nonmailable matters such as materials containing false representations, 39 U.S.C. §§ 3001 and 3005, 39 C.F.R. § 1.1 *et seq.*

The constitutional provision gives Congress the power to establish post offices. Plaintiff has failed to produce any authority for the proposition that this provision was meant to prohibit the states from passing laws to protect their residents. Courts faced with similar arguments concerning this constitutional provision have determined that it does not preempt state regulations that involve postal matters. *See Roth v. United States,* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957) (state law forbidding obscenity did not violate constitutional provision when obscene matters were mailed); *Railway Mail Assoc. v. Corsi,* 326 U.S. 88, 65 S.Ct. 1483, 89 L.Ed. 2072 (1945) (state law forbidding discrimination in labor organizations which applied to railway postal clerks association did not violate constitutional provision); *Aldens, Inc. v. Packel,* 379 F.Supp. 521 (M.D.Pa.1974) (state law regulating finance charges on transactions conducted by mail within state did not violate constitutional provision), *modified on other grounds,* 524 F.2d 38 (3d Cir.1975), *cert. denied,* 425 U.S. 943, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976); *State v. McHorse,* 85 N.M. 753, 517 P.2d 75 (App.1973) (state law prohibiting distribution of controlled substances not preempted by constitutional provision when substances were mailed); *Ministers Life and Casualty Union v. Haase,* 30 Wis.2d 339, 141 N.W.2d 287 (1966) (state law regulating mail-order insurance business did not violate constitutional provision), *appeal dismissed,* 385 U.S. 205, 87 S.Ct. 407, 17 L.Ed.2d 301 (1966) (*per curiam*). Only when the state law involves a "direct, physical interference with federal activities under the postal power or some direct, immediate burden on the performance of postal functions" will state regulation be deemed unconstitutional. *Railway Mail Assoc. v. Corsi, supra,* 326 U.S. at 96, 65 S.Ct. at 1488. We fail to find here that the provisions of the KCPA violate the constitutional provision giving the Congress the power to establish post offices because the KCPA does not impinge on federal mail service or the power of the government to conduct it.

In determining whether the statutes and regulations that have promulgated in accordance with the constitutional provision have by virtue of the Supremacy Clause preempted the provisions of the KCPA, we are guided by teachings of *Hillsborough County v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985):

> Under the Supremacy Clause, federal law may supersede state law in several different ways. First, when acting within constitutional limits, Congress is empowered to pre-empt state law by so stating in express terms. *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 [97 S.Ct. 1305, 1309, 51 L.Ed.2d 604] (1977). In the absence of express pre-emptive language, Congress' intent to pre-empt all state law in a particular area may be inferred where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress "left no room" for supplementary state regulation. *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 [67 S.Ct. 1146, 1152, 91 L.Ed. 1447] (1947). Pre-emption of a whole field also will be inferred where the field is one in which "the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Ibid.;* see *Hines v. Davidowitz*, 312 U.S. 52 [61 S.Ct. 399, 85 L.Ed. 581] (1941).

Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law. Such a conflict arises when "compliance with both federal and state regulations is a physical impossibility," *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–143 [83 S.Ct. 1210, 1217–18, 10 L.Ed.2d 248] (1963), or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines v. Davidowitz, supra*, [312 U.S.] at 67 [61 S.Ct. at 404]. See generally *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 698–699 [104 S.Ct. 2694, 2699–2700, 81 L.Ed.2d 580] (1984).

Plaintiff does not contend that Congress explicitly preempted the KCPA. Therefore, the question becomes (1) whether the federal statutes and regulations are so broad as to cover the entire field, or (2) whether the federal interest is so dominant that the federal law will be assumed to preclude any state laws on the subject, or (3) whether it is impossible to comply with both the federal and state laws.

The court finds no support for the positions taken by the plaintiff on the first two issues. Plaintiff has failed to cite any authority, and we have not discovered any cases supporting its contentions. The defendant has cited several cases which are instructive on the aforementioned questions.

In *State of Washington v. Reader's Digest Assoc., Inc.*, 81 Wash.2d 259, 501 P.2d 290 (1972) (*en banc*), *appeal dismissed*, 411 U.S. 945, 93 S.Ct. 1927, 36 L.Ed.2d 406 (1973), the Attorney General of Washington brought action seeking a declaratory judgment that the defendant's sweepstakes violated the state's consumer protection act, an injunction against conducting or advertising the sweepstakes in Washington or accepting sweepstakes entries from that state, and an order directing the defendant to pay a civil penalty for each advertisement of the sweepstakes disseminated after a certain date. The defendant argued that the field in which the state was seeking to regulate had been preempted by the United States Postal Service. The Washington Supreme Court responded to the preemption argument as follows:

> [R]espondent argues that federal statutory control over lotteries by mail preempts the regulation of mail order lotteries by states. This contention is without merit. While it is true the state is without power to regulate the mail, it is not powerless to prevent respondent from using unfair trade practices within its borders. *Roth v. United States*, 354 U.S. 476, 493–494, 77 S.Ct. 1304 [1313–1314] 1 L.Ed.2d 1498 (1957). The state cannot enjoin the mails, but it can enjoin respondent from conducting the Sweepstakes within its borders, subjecting re-

spondent to the penalties of the Consumer Protection Act for refusal to comply. (Footnote omitted.)

501 P.2d at 303.

In *State ex inf. Danforth v. Reader's Digest Assoc., Inc.*, 527 S.W.2d 355 (Mo. 1975) (*en banc*), the Attorney General of Missouri brought an action alleging the defendant's mailing into the state violated the state lottery laws. The defendant argued that the federal government had occupied the field of mailability of lottery material and that any regulation of such material had been preempted to the exclusion of state action. The Missouri Supreme Court rejected the argument and stated:

> [I]t is obvious that there would be no "... direct, physical interference with federal activities under the postal power or some direct, immediate burden on the performance of the postal functions ..." (*Roth,* case, supra). The postal service would not be affected in its operations; there would be no responsibility on its behalf to screen mail addressed to Missourians; in no sense would the service be an enforcement agent of the lottery laws of Missouri; and granting of the relief sought would not be an attempt to decide what can or cannot be accepted and delivered as mail. Only the respondent would be told that it cannot conduct its lottery (if, in fact, it is found to be a lottery) in Missouri or advertise it or solicit participation in it from residents of Missouri. Respondent would not be penalized for using the mails but for conducting an enterprise which is repugnant to the laws and public policy of this state.

527 S.W.2d at 362–63.

Plaintiff attempts to distinguish the aforementioned cases by stating that they are limited to situations involving lotteries. We disagree. Although the context is somewhat different, the reasoning is directly applicable here.

There is little doubt that the federal statutory scheme for handling, delivering and sorting the mails is comprehensive. The United States Postal Service may determine whether matter is nonmailable under statutory guidelines, and may return any nonmailable matter to the sender. "But merely because the federal provisions were sufficiently comprehensive to meet the need identified by Congress did not mean that States and localities were barred from identifying additional needs or imposing further requirements in the field." *Hillsborough County v. Automated Medical Laboratories, Inc., supra,* 471 U.S. at 717, 105 S.Ct. at 2377. Thus, while the state may not regulate the mail, it may prevent unfair trade practices from occurring within its boundaries. The state has chosen here through the KCPA to augment the federal laws by providing additional safeguards. We find nothing in the federal statutes on the United States mails to preclude the passage and implementation of legislation such as the KCPA.

The court also finds no support for the position that the federal interest in preventing fraud or deception through the use of the United States mails is so dominant as to preclude any state laws on the subject. In reaching this conclusion, we were guided again by *Hillsborough County v. Automated Medical Laboratories, Inc., supra,* at 719, 105 S.Ct. at 2378:

> Undoubtedly, every subject that merits congressional legislation is, by definition, a subject of national concern. That cannot mean, however, that every federal statute ousts all related state law. Neither does the Supremacy Clause require us to rank congressional enactments in order of "importance" and hold that, for those at the top of the scale, federal regulation must be exclusive.
>
> Instead, we must look for special features warranting preemption.

No such special features are present here. The protection of consumers from fraud and deception has historically been a matter of state interest. *Ohralik v. Ohio State Bar Assn.,* 436 U.S. 447, 462, 98 S.Ct. 1912, 1921, 56 L.Ed.2d 444 (1978); *Savage v. Jones,* 225 U.S. 501, 32 S.Ct. 715, 56 L.Ed. 1182 (1912). The federal statutes prohibiting the mailing of fraudulent materials simply do not convert this area into a matter of overriding national concern.

■ Finally, we find no conflict between the federal statutes and the KCPA. The KCPA prohibits the actual fraudulent activities while the federal law merely prohibits the mailing of fraudulent materials. There is some overlap, but each law is intended for and serves different purposes.

In sum, we do not find that the application of the KCPA to mailed materials is preempted by the Constitutional provision giving Congress the power to establish post offices or the federal statutes allowing the United States Postal Service to investigate and act on allegedly fraudulent or deceptive acts being carried on through the mails. Accordingly, the defendant must be granted summary judgment on this claim.

The preemption issue raised here by plaintiff has recently been decided in another case brought by this plaintiff in Georgia. In *Bazarian v. Harris,* No. 1:88–cv–232–MHS (N.D.Ga., unpublished, 2/22/89), Judge Marvin Shoob rejected the plaintiff's argument that the application of the Georgia Fair Business Practices Act was preempted by Article I, section 8, clause 7 of the United States Constitution and the provisions of the United States Code allowing the United States Postal Service to investigate and act on allegedly fraudulent or deceptive acts being carried on through the mails. The reasoning of Judge Shoob provides additional support for this court's ruling:

> The Georgia statute prohibits the actual fraudulent activities; the federal regulation merely prohibits the mailing of fraudulent materials. While the two statutes obviously overlap, they were each intended for and serve different purposes. The state could never attempt to prohibit plaintiffs from using the mail to conduct their business, but they could ban plaintiffs from conducting business within the state if it were necessary to protect state residents. The minor impact of the state action on the federal regulation of the mails is precisely how our system is supposed to work: the federal government makes broad regulations designed to provide general protection to U.S. citizens; then the state makes and enforces regulations which define and apply those general regulations in a way designed to enhance the protection provided by the federal government. The federal government cannot possibly provide the same protection that the states can provide on a local level.

> Since Congress undoubtedly knew of the states' history of regulating fraud and dishonest business dealings within the state, it could easily have written into the federal postal regulations that the regulations were intended to be the sole rules applicable to such activities. Without any evidence of such an intent or of such a pervasive regulation that there is no room left for state protection, the Court must find that the federal regulations do not preempt the state regulation.

> All states have laws requiring certain actions by people or companies wishing to conduct business in the state. Requiring that such business be conducted in a fair and honest manner is one law that everyone must agree is within the state police power. Unless that law conflicts with similar federal regulations, it cannot be preempted. In this case there is no evidence on which to base a conclusion that Congress intended that the federal regulations preempt state laws.

*Id.,* slip op. at 7–8.

## II.

■ Plaintiff next contends that its First Amendment rights have been violated by the application of the KCPA to its activities in the State of Kansas. Plaintiff asserts that its mailings are commercial speech which is protected by the First Amendment.

In *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976), the Court held that unwarranted governmental regulation of commercial speech infringes upon the First Amendment rights of both the speaker and the listener. Nevertheless, the Court made clear that it did not intend by its decision to impair the government's ability to regulate misleading or deceptive speech. "Obvious-

ly, much commercial speech is not provably false, or even wholly false, but only deceptive and misleading. We foresee no obstacle to a State's dealing effectively with this problem." *Id.*, at 771, 96 S.Ct. at 1830.

In *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980), the Court adopted the following four-part analysis for assessing the validity of restrictions on commercial speech:

At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

*Id.*, at 566, 100 S.Ct. at 2351.

In applying this analysis to the provisions of the KCPA, we find no violation of the plaintiff's First Amendment rights. Through the KCPA, the State of Kansas has attempted to deal with deceptive and misleading practices. The statutes adopted by the state clearly and directly advance the governmental interest of the protection of consumers from fraud and deception. The KCPA as applied to plaintiff does not overreach. The law does no more than necessary to protect consumers from fraud. Accordingly, the court shall grant summary judgment to defendant on this claim.

### III.

Plaintiff also contends that the KCPA has violated its rights to due process under the Fifth and Fourteenth Amendments. The exact nature of this contention is somewhat unclear. Plaintiff argues initially that the KCPA "attempts to impair the obligation of contracts between consenting parties in that it attempts to regulate the type of 'material benefit' received by either party to a contract and attempts to determine whether a contract is 'excessively one-sided in favor of the supplier, in violation of the due process clause of the Fifth and Fourteenth Amendments of the United States Constitution and as they relate to the contract clause and the First Amendment of the United States Constitution." Plaintiff also claims its due process rights are violated by the KCPA because the state is able "to obtain jurisdiction on a nonresident, whose only contact with the State is through the United States Mail."

■ To the extent that we understand plaintiff's arguments, we fail to find any support for them. The law is quite explicit that the states have clear "authority to safeguard the vital interests" of their people, even when private contracts are thereby altered. *City of El Paso v. Simmons*, 379 U.S. 497, 508, 85 S.Ct. 577, 583, 13 L.Ed.2d 446 (1965). Moreover, the activities of the plaintiff of which complaint is made in this action establishes sufficient minimum contacts with the State of Kansas to satisfy the due process clause of the Fourteenth Amendment. *State ex inf. Danforth v. Reader's Digest Assoc., Inc.*, *supra*, at 358. Thus, we must also reject this argument and award summary judgment to the defendant.

In sum, we find that the motion of defendant for summary judgment must be granted. The undisputed facts demonstrate the plaintiff is entitled to no relief in this action.

IT IS THEREFORE ORDERED that plaintiff's motion for summary judgment be hereby denied.

IT IS FURTHER ORDERED that defendant's motion for summary judgment be hereby granted. Judgment shall be entered for the defendant and against the plaintiff.

IT IS SO ORDERED.