757 A.2d 142

**STATE of Maryland**

v.

**Mary Jean CAIN.**

**No. 140, Sept. Term, 1999.**

Court of Appeals of Maryland.

July 28, 2000.

206

Kathryn Grill Graeff, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, on brief), Baltimore, for petitioner.

Mary J. Pizzo, Assistant Public Defender (Stephen E. Harris, Public Defender, and Nancy S. Forster, Assistant Public Defender, on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and HARRELL, JJ.

RAKER, Judge.

This case appears to present a cutting-edge issue, because it involves a prosecution for theft by means of a deception across state lines perpetrated partly via the Internet. But in reality, the case turns on principles developed by common-law courts long ago, in connection with business done by mail. The question presented in this case is whether a Maryland trial court has territorial jurisdiction over a prosecution for theft by deception in violation of Maryland Code (1957, 1996 Repl.Vol., 1999 Supp.) Art. 27, § 342,[1] where the application for the statement of charges states that a victim in Maryland was deceived by an accused located in Georgia, via Internet and telephone, and thereby induced to mail a check to the accused in Georgia, in exchange for goods which, when mailed from Georgia to Maryland, proved not to be as the accused represented them. We shall answer this question in the affirmative.

I.

On January 21, 1999, Respondent Mary Jean Cain, a resident of Riverdale, Georgia, was charged under § 342 in the District Court of Maryland, Allegany County, with one count of theft by deception of property with a value of $300 or more. The charging document states that Debbie Ann Amyot, of Cumberland, Maryland, contacted the Cumberland Police Department after she received a shipment of Barbie dolls from Respondent. Ms. Amyot told the police investigator that she had responded to an advertisement placed on the Internet by Respondent for the sale of a "mint" collection of ninety-five Barbie dolls in their original boxes, the dolls and boxes all in "collector's condition." Ms. Amyot subsequently communicat-

---

1. Unless noted otherwise, subsequent statutory references shall be to Maryland Code (1957, 1996 Repl.Vol., 1999 Supp.) Art. 27.

ed with Respondent by e-mail and telephone calls to Respondent's home in Riverdale, Georgia. Ms. Amyot ultimately agreed to buy the entire doll collection for $6,140. On August 28, 1998, Ms. Amyot mailed, to Respondent's home in Georgia, bank check number 637558768 in that amount, drawn on the First National Bank and Trust (presently known as First United National Bank and Trust), Oakland, Maryland, and made payable to Respondent. On September 9, 1998, Ms. Amyot received by mail a shipment from Respondent of thirty-six Barbie dolls in poor condition, contained in boxes in poor condition, and having "slight collector value." Ms. Amyot contacted Respondent and requested to return the dolls. Respondent then terminated all contact with Ms. Amyot, and Respondent's home telephone number was disconnected. The Cumberland Police Department contacted the police in Clayton County, Georgia, where Cain resided. The Georgia police would not investigate the matter because the investigation had been initiated in Maryland, and the check forwarded to Cain was not cashed in Clayton County.

Respondent moved to dismiss the charge on the ground that the Maryland court lacked territorial jurisdiction. The District Court granted the motion. The State appealed to the Circuit Court for Allegany County. *See* Maryland Code (1974, 1998 Repl.Vol., 1999 Supp.) § 12–401 of the Courts and Judicial Proceedings Article. The appeal was heard on the record. *See id.;* Maryland Rule 7–102. The Circuit Court affirmed the judgment, agreeing that Maryland courts lacked territorial jurisdiction. We granted the State's petition for writ of certiorari.

## II.

The State argues that the District Court had territorial jurisdiction of the prosecution. First, jurisdiction exists in Maryland where the intended result of the defendant's actions occurs in Maryland, if the definition of the crime includes such a result. Thus, the Maryland court had jurisdiction because the intended result of Respondent's conduct, i.e., to deprive Ms. Amyot of her property, is an essential ingredient of theft

by deception, and occurred in Maryland. Second, the State argues that Cain had a duty to account for the stolen property in Maryland, and that when there is such a duty, Maryland courts have territorial jurisdiction. Respondent argues that neither of these theories applies to the facts in this case, and that because all of the conduct with which she is charged occurred while she was in Georgia, the District Court lacked jurisdiction.

We reverse the judgment, but not for either of the reasons the State advances.[2] As we shall explain, the District Court's territorial jurisdiction is founded on a simpler basis: It is open to the State to prove that the essential element of the crime—Respondent's obtaining control of the victim's property—occurred in Maryland, through the agency of the U.S. Postal Service.

Neither the Maryland Constitution nor the Code addresses jurisdiction over the offense of theft by deception. Therefore,

---

**2.** Neither theory can sustain the District Court's jurisdiction. An intended result in Maryland can be the basis of territorial jurisdiction only if the definition of the crime includes such a result. *See Pennington v. State*, 308 Md. 727, 733, 521 A.2d 1216, 1219 (1987). The State argues that the definition of theft by deception includes an intended result because § 342(b)(1) states, as an element of that crime, that the accused "[h]as the purpose of depriving the owner of the property." The State is wrong, because this provision states a *purpose of the accused*, not a *result of the crime*. An accused's purpose *aims at* a result, but does not constitute a result.

Under the duty-to-account theory, the courts of a state have territorial jurisdiction of a crime involving misappropriation of property if the accused had a preexisting obligation to account for the property in that state. *See Wright v. State*, 339 Md. 399, 663 A.2d 590 (1995). In *Wright*, a truck driver was subject to prosecution in Maryland under § 342, for what was formerly known as larceny after trust, when he drove a truck out of Maryland while lawfully in possession of it, but failed to bring it back to Maryland. He had a duty as part of his employment to return the truck to its owners in Maryland. This obligation was the basis of Maryland's territorial jurisdiction. *See id.* at 405, 663 A.2d at 593. The State argues that Cain had a duty to account for "the goods promised," i.e., the ninety-five mint-condition dolls, in Maryland. This argument is beside the point, because Cain is accused of obtaining control by deception of a check for $6,140, not obtaining control of dolls. And Cain did not have any preexisting duty to account for the check or money.

we turn to the common law. *See* Maryland Code (1974, 1998 Repl.Vol., 1999 Supp.) §§ 1–501 (jurisdiction of the circuit courts) and 4–201 (jurisdiction of the District Court of Maryland) of the Courts and Judicial Proceedings Article;[3] *Pennington v. State,* 308 Md. 727, 728–30, 521 A.2d 1216, 1216–17 (1987).

The general rule under the common law is that "a state may punish only those crimes committed within its territorial limits." *Id.* at 730, 521 A.2d at 1217. As we explained recently in *State v. Butler,* 353 Md. 67, 724 A.2d 657 (1999), the criminal courts of a state generally have territorial jurisdiction to hear prosecutions only of crimes that occurred in that state:

> Territorial jurisdiction describes the concept that only when an offense is committed within the boundaries of the court's jurisdictional geographic territory, which generally is within the boundaries of the respective states, may the case be tried in that state. The roots of the territorial jurisdiction requirement lie in the Sixth Amendment. . . .

*Id.* at 72–73, 724 A.2d at 660. "[A]n offense against the laws of the State of Maryland is punishable only when committed within its territory. A person cannot be convicted here for crimes committed in another state." *Bowen v. State,* 206 Md. 368, 375, 111 A.2d 844, 847 (1955).

It is clear that under the common law, an accused's actual presence in the state at the time the crime was commit-

---

**3.** Section 1–501 provides:

The circuit courts are the highest common-law and equity courts of record exercising original jurisdiction within the State. Each has full common-law and equity powers and jurisdiction in all civil and criminal cases within its county, and all the additional powers and jurisdiction conferred by the Constitution and by law, except where by law jurisdiction has been limited or conferred exclusively upon another tribunal.

Section 4–201 provides:

The jurisdiction of the District Court extends to every case which arises within the State or is subject to the State's judicial power, and which is within the limitations imposed by this title or elsewhere by law. Exercise of this jurisdiction is subject to the restrictions of venue established by law.

ted is not necessary. "[A]ssuming that the facts otherwise disclose an offense committed within the jurisdiction ... the court of such state where it was committed is not deprived of jurisdiction by the mere absence of the defendant from the state at the time of its commission." *Urciolo v. State*, 272 Md. 607, 631, 325 A.2d 878, 892 (1974); [4] *see also* 1 CHARLES E. TORCIA, WHARTON'S CRIMINAL PROCEDURE § 16 (13th ed. 1989 & Supp.1999). An accused's presence may be constructive as well as actual. *See Pennington*, 308 Md. at 732, 521 A.2d at 1218 (quoting 1 CHARLES E. TORCIA, WHARTON'S CRIMINAL LAW § 14 (14th ed.1978)); *State v. Winckler*, 260 N.W.2d 356, 360 (S.D.1977). Although constructive presence is a legal fiction, "it is a fiction necessary to the practical administration of justice." *Winckler*, 260 N.W.2d at 360. The Supreme Court of South Dakota observed:

"There may be a constructive presence in a State, distinct from a personal presence, by which a crime may be consummated. And if it may be consummated it may be punished by an exercise of jurisdiction; that is, a person committing it may be brought to trial and condemnation. And this must be so if we would fit the laws and their administration to the acts of men and not be led away be mere 'bookish theorick.' " *Hyde v. United States*, 225 U.S. 347, 362–63, 32 S.Ct. 793, 800, 56 L.Ed. 1114 (1912).

*Id.* at 360–61.

But when is an offense committed within the jurisdiction? "If the various elements of a given offense do not all occur

---

4. The defendant in *Urciolo v. State*, 272 Md. 607, 325 A.2d 878 (1974) was charged with the offense of embezzlement in violation of Maryland Code (1957, 1971 Repl.Vol.) Art. 27, § 129, now subsumed in the consolidated theft statute. The essential element in embezzlement is fraudulent intent. *See id.* at 623, 325 A.2d at 888. Where intent plus possession is proven, there is a sufficient basis for a court to assume jurisdiction. *See id.* at 624, 325 A.2d at 888. The offense of embezzlement differs from false pretenses in that in embezzlement, the property has rightfully come into the possession of the defendant, whereas in false pretenses, the defendant gains possession of the property wrongfully and by means of deception. Thus, in embezzlement, possession plus fraudulent intent must be shown.

within the borders of a single state, it becomes necessary to decide in which state the offense has been 'committed.'" *Pennington,* 308 Md. at 730, 521 A.2d at 1217. It is sometimes stated that each offense has, for jurisdictional purposes, one key act or omission and that this element must have taken place in the state where the prosecution is instituted. Professors LaFave and Scott state:

> At common law (that is, in the absence of a statute) jurisdiction over crimes is limited ... by the notion that each crime has only one situs (or locus), and that only the place of the situs has jurisdiction. In other words, the common law picked out one particular act (or omission) as vital for the determination of the place of commission (i.e., the situs) of each of the various crimes and give jurisdiction to that state (and only that state) where the vital act or result occurred. Generally, it may be said that the situs of a crime at common law is the place of the act (or omission) if the crime is defined only in these terms, and the place of the result if the definition of the crime includes such a result.

1 WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 2.9(a), at 180 (1986).

The question of how to determine in which state a crime has been committed has been settled in various ways by the several states, however. Some courts have asserted that a crime may, for jurisdictional purposes, have several essential elements, and that where these occur in several states, each such state has jurisdiction. The Arizona Court of Appeals, for example, has said that

> it is ... generally accepted that if the requisite elements of the crime are committed in different jurisdictions, any state in which an essential part of the crime is committed, may take jurisdiction.

*State v. Scofield,* 7 Ariz.App. 307, 438 P.2d 776, 784 (1968). *See also State v. Hilpert,* 213 Neb. 564, 330 N.W.2d 729, 736 (1983) ("[W]here the requisite elements of the crime are committed in different jurisdictions, if an essential element of the crime is committed in this state, jurisdiction to prosecute

is present."); *Winckler,* 260 N.W.2d at 360 ("A state can exercise jurisdiction to punish any criminal offense committed in whole or in part within that state.").

 The essential element of the crime of theft by deception, at least for jurisdictional purposes, is the accused's obtaining control of the subject property.[5] We conclude that if the check was mailed in the State of Maryland,[6] the essential element occurred in Maryland, because Respondent obtained control of the property through the agency of the Postal Service when the complainant deposited it in the mail. Because obtaining control is the essential element of the theft by deception offense, the State will have established prima facie the necessary jurisdictional fact if it proves that the check was posted in Maryland.

Section 342, the statute under which Respondent was charged, provides, in pertinent part, as follows:

(b) **Obtaining control by deception.**—A person commits the offense of theft when he willfully or knowingly uses deception to obtain and does obtain control over the property of the owner, and;

(1) Has the purpose of depriving the owner of the property; or. . . .

 In 1978, the Legislature consolidated into the single crime of theft a number of separate crimes that formerly existed, one of which was false pretenses. *See* § 341. Theft

---

**5.** The Maryland Pattern Jury Instruction for theft by deception breaks out the elements of the offense as follows:

(1) that the defendant wilfully or knowingly obtained control over someone else's property;

(2) that the defendant wilfully or knowingly used deception; and

(3) that the defendant had the purpose of depriving the owner of the property . . .; [and]

[ (4) that the value of the property was at least $300.]

Maryland Criminal Pattern Jury Instructions § 4:32.1, at 406 (1997). We have never before determined which of these is the essential element for jurisdictional purposes.

**6.** The application for the statement of charges does not expressly state that the check was deposited in the mail in Maryland. This does not, however, in any way prevent the State from proving at trial that it was.

by deception now covers conduct formerly amounting to false pretenses. *See* § 342(b); *Fraidin v. State*, 85 Md.App. 231, 243–44, 583 A.2d 1065, 1071–72 (1991). Obtaining control of the property is the essential element for purposes of jurisdiction of the crime of false pretenses. *See Norris v. State*, 25 Ohio St. 217, 221 (1874); *Updike v. People*, 92 Colo. 125, 18 P.2d 472 (1933); *Commonwealth v. Wood*, 142 Mass. 459, 8 N.E. 432 (1886). The offender may be tried where the property was obtained. *See Norris*, 25 Ohio St. at 221 (citing *Regina v. Stanbury*, 31 L.J.M.C. 88, 5 L.T. 686, 10 W.R. 236, 9 Cox C.C. 94, Fisher's Digest, 169, Leigh & C. 128 (C.C.R. 1862)). There is also ample authority for the proposition that when one uses deception to obtain control of another's property, and the other delivers the property by mail, control is obtained when the property is deposited in the mail. *See e.g., State v. Briggs*, 74 Kan. 377, 86 P. 447 (1906); *Bozarth v. State*, 56 Okla.Crim. 424, 41 P.2d 924 (App.1934); *Commonwealth v. Prep*, 186 Pa.Super. 442, 142 A.2d 460 (1958). *See also* Annotation, *Where Offense of Obtaining Money by Fraud Is Deemed To Be Committed When Mail or Telegraph Is Employed*, 43 A.L.R. 545 (1926).

In *Updike*, appellant was convicted in Colorado of obtaining money by false pretenses. Updike, living in Idaho, made representations by mail to the victim Zadra, in Colorado, to the effect that a corporation managed and partly owned by him owned large quantities of sheep and hay, and that if Zadra invested money, it would be used in the business of that corporation. In fact, that corporation had few or no assets. Zadra, deceived by these representations, sent a check for $5,000 by U.S. Mail from Colorado to Updike in Idaho. Updike negotiated the check and diverted the money to his personal use and to the use of a second company he also managed. *See Updike*, 18 P.2d at 473.

The Colorado Supreme Court stated that "the crime of obtaining money by false pretenses is committed where the property is obtained by the defendant," and that this proposition "narrows the question to a determination of where the property or thing of value was obtained." *Id.* at 474.

"Where, induced by false pretenses, one transmits by mail to defendant money, drafts, or other writings, such mailing is a delivery to the postmaster as the agent of the defendant, to be forwarded to him, and the offense is committed where the letter is mailed, and is indictable at such place." *Id.* at 474–75. The court noted that the check was mailed in Colorado to the defendant, there delivered to the postmaster as agent of the defendant and then and there defendant obtained it. The offense was complete and the prosecution was proper in Colorado. *See id.* at 476.

A similar case is *Wood.* Wood was convicted in Massachusetts of obtaining money by false pretenses. Wood, who did business in New York, made false representations in Berlin, Massachusetts, concerning certain stock, to the victim Peters. Deceived, Peters was induced to mail a cashier's draft for $4,612.50 from Massachusetts to Wood in New York, to purchase stock. Wood argued that the court lacked jurisdiction because the offense was not complete in Massachusetts. *See Wood,* 8 N.E. at 434. The Massachusetts Supreme Judicial Court disagreed:

> Although the defendant received the money on the cashier's draft in New York or in Minneapolis, it cannot be doubted that the offense charged in the indictment was accomplished and completed at Berlin when Peters, at the request of the defendant, sent him the draft, whether he sent it by hand of an agent of the defendant, or deposited it in the mail. The exceptions do not show how he sent it; but, if he sent it by a carrier or other agent of the defendant, the delivery to the agent was a delivery to the defendant. *Com. v. Taylor,* 105 Mass. 172. So, if he sent it by mail, when he deposited it in the post-office it passed out of his control into the control of the defendant to forward the letter to him. *Regina v. Jones,* 1 Eng. Law & Eq. 533; S.C. 4 Cox, Crim. Cas. 198.

*Id.* at 434–35.

A number of other cases support the proposition that the defendant obtains control of property when the property is placed in the mail. *See Briggs,* 86 P. at 449 (holding that

where defendant induced victim, by false pretenses, to mail a draft from a post office in Crawford County to defendant in Labette County, venue of the prosecution in Crawford County is proper, because "[t]he draft was obtained from [the victim] when he surrendered possession of it by placing it in the post office, addressed to appellant. The Post Office Department is deemed to be the agent of the appellant in the same way that a common carrier would have been his agent if the draft had been given to it for delivery to the appellant."); *Bozarth,* 41 P.2d at 926 (holding that the crime of obtaining money by false pretenses is completed where the property is obtained, and that where the victim is induced to deposit property in the mail to be delivered to defendant, the property is obtained by defendant at the place from which it is mailed); *Prep,* 142 A.2d at 463, 464 (holding that "[a] prosecution for the crime of cheating by fraudulent pretenses should be brought in the county where the offense is completed, that is, where the chattel, money, or valuable security is actually obtained by the defendant," and that "the mailing of the checks to defendant by posting them in Dauphin County was a delivery sufficient to confer jurisdiction upon" the court in Dauphin County, although the checks were received by defendant in Schuylkill County). *See also State v. Devot,* 66 Utah 319, 242 P. 395, 396–97 (1925) (holding that where defendant in California obtained money by false pretenses expressed by telegraph to victim in Utah, and victim gave money to telegraph company in Utah for transmission by wire to defendant in California, defendant was prosecuted and convicted properly in Utah, because "the crime of obtaining money or property is completed where the money or property is obtained," and the telegraph company was the agent of the defendant to obtain the money in Utah).

There is authority to the contrary, and, as expected, it is relied upon by Respondent. In *State v. Roy,* 155 La. 238, 99 So. 205 (1924), for instance, the defendant was indicted in Rapides Parish for obtaining money by false pretenses. The victim mailed, from Rapides Parish, a cashier's check and two sight drafts to the defendant in Red River Parish, where the

defendant deposited them in his bank account. *See id.* at 205. The Louisiana Supreme Court held that the trial court correctly dismissed the indictment, on the ground that the court in Rapides Parish lacked jurisdiction, because the defendant did not obtain the money there, but obtained it in Red River Parish. *See id.* In *Commonwealth v. Schmunk*, 207 Pa. 544, 56 A. 1088 (1904), the defendant was convicted in Pennsylvania of obtaining goods by false pretenses. The defendant mailed a letter containing misrepresentations from Pennsylvania to New York, and the victim, relying on it, consigned goods to a common carrier in New York to be shipped to the defendant in Pennsylvania. *See id.* at 1088. The defendant argued that the Pennsylvania trial court lacked jurisdiction because the goods were obtained in New York when the victim delivered them to the common carrier. *See id.* The Pennsylvania Supreme Court held that the Pennsylvania trial court had jurisdiction because "[t]he offense charged against him is not that he procured a technical delivery to himself by a delivery of the goods to a common carrier in another state, but it is that he actually obtained them. This he did only when they reached him in the county in which he was indicted...." *Id.* at 1089. The court emphasized that if the victim had learned of the fraud while the goods were in transit, he would have been able to stop them and prevent their delivery to the defendant. *See id.* at 1088.

■ We think the better view is that the element of obtaining control of the property is accomplished when the victim surrenders his or her property to the control of the accused. That is accomplished when the property is under the control of the defrauding party, whether personally or through the defrauding party's agent, and beyond the control of the other.[7]

---

7. In this case, Cain obtained control over the property constructively because it was in the control of her agent in Maryland. We express no opinion as to whether Georgia would have jurisdiction under the circumstances presented herein.

■ The proposition that the Postal Service can act as an agent, obtaining control of property at the point of mailing on behalf of an addressee who has requested that the property be sent, falls within the more general proposition that a defendant outside a jurisdiction who uses an innocent agent to carry out the essential element of a crime inside the jurisdiction is treated as if acting where the agent acted. In *Urciolo,* 272 Md. at 631, 325 A.2d at 892, we stated that "[w]here one absent from a state commits a crime therein through an innocent agent the absentee is liable in the state in which the crime was committed to indictment, trial and conviction." *See also Simmons v. State,* 165 Md. 155, 163, 167 A. 60, 63 (1933) (defendant who fraudulently instructed bank to pay out money to certain persons was properly convicted of obtaining money by false pretenses even though money was not actually delivered to defendant, because defendant made bank his innocent agent in inducing it to transfer the money for his benefit); *Adams v. People,* 1 N.Y. 173, 178 (1848) (holding that defendant, who, while in Ohio, obtained money by false pretenses from victims in New York, using innocent agents in New York, was liable to prosecution in New York); *Commonwealth v. Gillespie,* 7 Serg. & Rawle 469 (Pa.1822) (holding that where defendant conspired in New York to sell illegal lottery tickets in Pennsylvania, and sold them in Pennsylvania through an agent there, his prosecution in Pennsylvania was proper); *Rex v. Brisac & Scott,* 4 East 164, 172 (K.B.1803) (holding that ship's captain and purser committed in the county of Middlesex the offense of delivering to the navy falsified vouchers for reimbursement of the cost of ship's provisions, even though they conspired to make and made the vouchers on the high seas, because the vouchers were delivered in Middlesex by their innocent agents).

The principle that an accused, acting from outside a jurisdiction through an innocent agent inside the jurisdiction, is liable to prosecution in the jurisdiction, has often been applied in cases in which the innocent agent is a common carrier, and the accused acts through the common carrier by inducing a victim to deliver property to the common carrier, to be

shipped from inside the jurisdiction to the accused outside. *See, e.g., Commonwealth v. Taylor,* 105 Mass. 172, 172 (1870) (applying the "well established doctrine, that delivery to the carrier is delivery to the consignee" in holding that offense of obtaining machines by false pretenses was completed in Worcester County, Massachusetts, where defendant induced victims to send machines from there by railroad, to defendant in Vermont); *Norris,* 25 Ohio St. at 228 (holding that where defendant in Clark County obtained a quantity of sewer pipe from the victim in Summit County by means of false representations in a letter, and the goods were sent by rail from Summit County to defendant in Clark County, venue lay in Summit County, where the railroad obtained the property for defendant as his agent). *See also People v. Haynes,* 14 Wend. 546 (N.Y.1835) (reversing conviction of obtaining goods by false pretenses where defendant made false representations regarding his ability to pay only after goods had been committed by the victim to a steamboat line for delivery to defendant, but before the goods had arrived at defendant's residence; defendant had already obtained the goods when they were received by the carrier, and thus did not obtain them by means of the subsequent false representations). The rule upon which we rely here—that an accused obtains control when a victim, relying on the accused's representation, deposits the property in the mail—is but a variation on this principle.

Respondent argues that she did not obtain control of Ms. Amyot's property when the check was deposited in the mail because the word "control" in § 342 means the defendant must have actual, personal control of the property. This argument is meritless. We are here concerned with agency; if an agent has actual control of property, we impute that control to the agent's principal. The Postal Service had actual control of the check.

Respondent argues that the victim retained control of the property after mailing it because she was able to stop payment on the check until Respondent cashed it. Until

Respondent deposited the check, she argues, Ms. Amyot had unilateral ability to stop payment. *See State v. Smith,* 162 Iowa 336, 144 N.W. 32, 34 (1913) (holding that there was not yet a completed offense when victim, relying on defendant's misrepresentation, mailed a check from Nebraska to defendant in Iowa; the offense was completed only when the check was paid to defendant in Iowa); *Bates v. State,* 124 Wis. 612, 103 N.W. 251, 253–54 (1905) (holding that the crime of obtaining money by false pretenses was not committed in Wisconsin where the victim mailed, from Wisconsin, a draft to a person in Iowa, at the defendant's direction; the draft was paid in Iowa. There was no jurisdiction in Wisconsin because, among other reasons, the crime charged was obtaining *money* by false pretenses; money was obtained when the draft was paid, not when the draft was obtained; thus, even "[i]f ... we could consider the delivery to the post office the point of time at which [the victim] parted with something to defendant, there would still be no obtaining of money, but merely of orders to pay money—an entirely different article of property, for the obtaining of which defendant could be prosecuted notwithstanding either a conviction or an acquittal of obtaining money.").

Respondent's argument fails because Ms. Amyot's bank check itself was property of value under the Maryland statute. Section 340(i), in pertinent part, defines "property" as "anything of value, including but not limited to ... [c]ommercial instruments [and] ... [w]ritten instruments representing or embodying rights concerning anything of value, or services, or anything otherwise of value to the owner."

Other states have also treated a stolen instrument as property. In *Updike,* 18 P.2d at 475, the property the court recognized as having been obtained by the accused at the point of mailing was a check; in *Wood,* 8 N.E. at 434, it was a cashier's draft; in *Briggs,* 86 P. at 448, a draft; and in *Prep,* 142 A.2d at 463, checks. Rejecting the argument that the victim Zadra's check did not become a thing of value until Updike endorsed it, the court in *Updike* explained:

The value of Zadra's check was demonstrated but not created by its indorsement and payment; if it had possessed no inherent value beyond its mere indorsements, certainly the drawee bank ... would have repudiated it and returned it marked, 'No funds,' regardless of any indorsement. If the check was as destitute of value when originally issued as defendant would have us believe, it seems remarkable that defendant was so keen to get it away from the maker. The argument would seem to have as little merit as if it were contended that negotiable securities are not valuable until reduced to United States currency, or even that gold coin is not valuable until it is spent.

*Updike,* 18 P.2d at 475.

■■■ Respondent argues that the federal statutes criminalizing fraud by mail and wire, 18 U.S.C. §§ 1341, 1343 (1994), preempt the entire field of crimes involving the mail or electronic communication, and therefore there can be no prosecution under state law. We hold that the federal mail and wire fraud statutes do not preempt § 342 as applied to a crime involving use of the mail and/or telephone.

In *Conte & Co. v. Stephan,* 713 F.Supp. 1382 (D.Kan.1989), the United States District Court for the District of Kansas considered whether application of the Kansas Consumer Protection Act to frauds employing the mails was preempted by federal statutes pertaining to the U.S. mail or by the federal government's power to regulate the U.S. mail. The court held that there was no preemption, there being "no support for the proposition that the federal interest in preventing fraud or deception through the use of the United States mails is so dominant as to preclude any state laws on the subject," or for the proposition that the federal statutes preempted the field of preventing such fraud. *Id.* at 1386. Similarly, in *Brown v. Market Development, Inc.,* 41 Ohio Misc. 57, 322 N.E.2d 367, 373–74 (Com.Pl. 1974), the court held that the federal mail fraud statute did not preempt application of state fraud law to frauds employing the mails. The federal mail fraud statute "does not set forth that type of comprehensive, integrated

nationwide scheme which [would constitute] a preemption of the field." *Id.* We agree with this reasoning, and it applies to wire fraud as well as to mail fraud.

Respondent also argues, finally, that because the facts alleged could be the basis of a breach of contract action, they cannot also be the basis of a criminal prosecution. This argument was not presented to the trial court and is therefore unpreserved for appellate review. *See Walker v. State,* 338 Md. 253, 262, 658 A.2d 239, 243 (1995). Moreover, the argument is frivolous.

*JUDGMENT OF THE CIRCUIT COURT FOR ALLEGANY COUNTY REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE DISTRICT COURT OF MARYLAND AND TO REMAND THE CASE TO THAT COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. RESPONDENT TO PAY COSTS.*