900 A.2d 739

**Ajay GARG**

v.

**Deepa GARG.**

**No. 97, Sept. Term, 2005.**

Court of Appeals of Maryland.

June 8, 2006.

Stephen J. Cullen (Jeffrey M. Geller, Miles & Stockbridge, P.C., Towson, on brief), for petitioner.

Richard D. Rosenthal (Tydings & Rosenberg, LLP, Baltimore, on brief), for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

WILNER, J.

Respondent, Deepa Garg, filed a complaint in the Circuit Court for Baltimore County seeking a limited divorce from her husband, petitioner Ajay Garg, custody of their minor child, Chaitanya, spousal and child support, and certain ancillary relief. Mr. Garg moved to dismiss the complaint on the grounds that (1) he had not been validly served, and (2) because of proceedings already pending in a court in Indore, India, the Maryland court was precluded from exercising jurisdiction in the custody matter. After conducting an evidentiary hearing, the Circuit Court concluded that, because of

the pending case in India, it should not exercise jurisdiction, announced its findings in support of that conclusion, dismissed the entire action, and, pursuant to a subsequent motion, assessed costs and attorneys' fees against Ms. Garg. The court never ruled on the service of process issue.

The Court of Special Appeals vacated that judgment and remanded the case for further proceedings. *Garg v. Garg*, 163 Md.App. 546, 881 A.2d 1180 (2005). It held that (1) even if there might be a basis for concluding that the Maryland court should not exercise jurisdiction over the custody dispute, it clearly had subject matter jurisdiction over the divorce action, (2) the Circuit Court erred in deferring a request by respondent to appoint an attorney for the child pending resolution of the jurisdictional issue—in effect that, as a matter of law, it was required to appoint an attorney for the child before deciding the jurisdictional issue, and (3) in revisiting the jurisdictional issue on remand, the trial court was to apply the newly enacted Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) rather than the Uniform Child Custody Jurisdiction Act (UCCJA) that was in effect when the complaint was filed.

Petitioner is not contesting the intermediate appellate court's determination that the divorce action may proceed in Maryland, so we have no occasion to address that issue.[1] He does complain about the other two rulings, however, and his complaint is legitimate. The Court of Special Appeals erred in even addressing the Circuit Court's decision to defer the appointment of counsel for the child, as that was not a matter

---

1. We note that petitioner's motion to dismiss the divorce action was based on lack of proper service, not on any assertion of lack of subject matter jurisdiction. Mr. Garg contended that the complaint and summons were never properly served on him but were instead left with one Seenu Devappa in Hartford, Connecticut, on Ms. Garg's assertion that Devappa was authorized to receive service for Mr. Garg. Garg averred that he had never lived in Connecticut and that service on Mr. Devappa was not authorized by him or by either Maryland or Connecticut law. Neither the Circuit Court nor the Court of Special Appeals addressed that issue. It was not raised in Mr. Garg's petition for *certiorari*, and there is no complaint about it in his brief in this Court.

raised by Ms. Garg in her brief and was therefore not before the court. It was apparently injected *sua sponte* by the appellate court, without the benefit of argument, and then used to resolve the appeal. Having improperly injected the issue, the court then erred in its ruling on it; the court should not have second-guessed the discretionary decision by the Circuit Court judge which, under the circumstances, was entirely appropriate and well within the permissible bounds of his discretion. The Court of Special Appeals also erred in concluding that the UCCJEA had any application to this case; the plain language of the statute makes clear that the statute does *not* apply.

Because the intermediate appellate court ruled as it did on the appointment-of-counsel issue, it never addressed the principal issues actually raised by respondent in her appeal—whether the Circuit Court was correct in its determination that it had no jurisdiction under the UCCJA over the custody issue and whether the court erred in assessing expenses and attorneys' fees against her. We shall remand the case to the Court of Special Appeals so it can properly decide those issues, which were fully briefed and argued in that court but, in part because of the subsequent enactment of the UCCJEA, have no further public importance, other than to the parties, warranting review by this Court.

## BACKGROUND

Mr. and Ms. Garg were born and raised in India and were married there in July, 1991. Mr. Garg first came to the United States in 1985 as a student, earned a degree in chemical engineering, and remained gainfully employed here until 2000. In October, 1991, shortly after their marriage, Ms. Garg joined her husband in the U.S. and took up residence with him in Massachusetts. She became an American citizen in 1997 or 1998. Mr. Garg has remained a citizen of India. The child's citizenship status is unclear.

Both parties made trips back to India. In June, 1995, while pregnant, Ms. Garg returned to India to stay with Mr. Garg's parents in Indore, and, on September 23, 1995, Chaitanya was

born there. Mr. Garg visited them a month later, but they all resumed residence in Massachusetts in January, 1996, and, except for a visit to India by Ms. Garg and Chaitanya in January, 1999, continued to live there until July, 1999, when they returned to Indore. The family remained in India until Ms. Garg and Chaitanya came to Maryland on May 24, 2002.

The critical events relevant to this case occurred during the spring of 2002. It is evident that there had been significant family discord; each party has accused the other of a variety of inappropriate behavior. The parties were living in Indore, and Chaitanya—then six-and-a-half years old—was enrolled in school there. In March, Ms. Garg, without notice to her husband, removed Chaitanya from his school, and moved with him to the home of Ms. Garg's parents in Mumbai (formerly Bombay), nearly 400 miles away. On April 1, 2002, through counsel, Ms. Garg filed an action in the Mumbai court for maintenance allowance. That action never progressed because Mr. Garg was not served with process.

A week later, on April 8, 2002, Mr. Garg filed an action in the Indore court seeking the return of Chaitanya. It was an action solely for custody; he did not seek a divorce. Mr. Garg alleged that, under India law, the father is the natural guardian of his children over five years of age, and the basis of his complaint was that Ms. Garg had unlawfully abducted Chaitanya from his guardianship. At some point, before any proceedings on that complaint, Ms. Garg contacted a lawyer in Indore, Vimal K. Gangwal, Esq., by phone, claimed that she had been deserted by her husband, and requested Mr. Gangwal's professional assistance. She also, at some point in April, signed a general power of attorney, appointing her father, Shri V.K. Govil, as her attorney, with authority, among other things, to "attend to all the Court cases on my behalf."

On May 24, Ms. Garg and Chaitanya left India for the United States, settling in Maryland. In a subsequent statement, her attorney, Mr. Gangwal, asserted that Ms. Garg was unaware of the action in the Indore court when she left. It is not clear from whom he got that information; he later claimed that he had not been able to reach Ms. Garg after she left

India. In June, 2002, having first tried other methods of serving Ms. Garg, Mr. Garg published notice of his action in a Mumbai newspaper, apparently as a means of serving her by publication.

On July 11, 2002, the Indore court assumed jurisdiction. The order shows that Ms. Garg was represented by Mr. Gangwal in the proceeding. The essential issue was whether jurisdiction should lie (1) in Mumbai, (2) where the child was currently living in the U.S., or (3) in Indore, where the child had been living with his father prior to the mother's removing him. Mr. Garg, relying on the Guardians and Wards Act, asserted that custody jurisdiction belonged with the court where the child "ordinarily resides," that, under that law, the child was ordinarily residing in Indore, and that the mother's removal of the child could not defeat that jurisdiction.

Gangwal filed an application in the nature of a motion to dismiss, in which he argued that, because the parties and the child were all Hindu, the applicable law was not the Guardians and Wards Act but rather the Hindu Minority and Guardianship Act and that, under that Act, jurisdiction lay either in Mumbai or in Baltimore, Maryland, where, he asserted, the child was currently residing. Although Mr. Gangwal insisted that he had been unable to contact his client since she departed India, he obviously knew that she was in the Baltimore area and averred that they "are/were in USA at the time when the notice from the U.S. Court was served." It is not clear what notice he was referring to. There was no proceeding in a U.S. court until Ms. Garg filed this action in February, 2003, and the record shows that service of process from the Indore court was served on her at that time.[2]

The Indore court dismissed Ms. Garg's application, holding that the Guardians and Wards Act was applicable, that, under

---

2. The record shows that on January 2, 2003, the presiding judge of the Indore court sent a summons for Ms. Garg to the Circuit Court for Baltimore County with a request that it be served on her and that the summons and other documents from the Indore proceeding were, in fact, served on her through the Baltimore County Sheriff's office on February 25, 2003.

§ 9 of that Act, jurisdiction lay where the child had been "ordinarily residing," and that the mother's removal of the child did not suffice to abrogate that jurisdiction. Ms. Garg was directed to file an answer to the complaint. On August 26, 2002, Mr. Gangwal advised the court that, "after repeated calls," he had received no instructions from his client, and the court therefore decided to proceed *ex parte*. It is not clear whether anything further has occurred in the Indore court. Mr. Garg testified in this case, in September, 2003, that a hearing had been scheduled in the Indore court for some time in October, 2003.

On February 24, 2003, Ms. Garg filed this action in the Circuit Court for Baltimore County seeking, as we have said, a limited divorce, custody of Chaitanya, spousal and child support, and ancillary relief. It appears that, by then, Mr. Garg had returned to the U.S. and, according to Ms. Garg, was living in Connecticut. The ground asserted for the divorce and custody was extreme cruelty on Mr. Garg's part directed at her and the child. On those same allegations of cruelty and threats, Ms. Garg, on March 7, filed an *ex parte* motion for immediate custody, which was denied because she had failed to provide the notice required under Maryland Rule 1–351. The court did, however, temporarily enjoin Mr. Garg from removing the child from Maryland. On March 18, Ms. Garg filed another *ex parte* motion for immediate custody, based on the same allegations of cruel behavior and threats, which also was denied.

Mr. Garg in due course moved to dismiss the entire action on the ground that he had not been properly or effectively served with process and separately moved that the court decline to exercise jurisdiction over the custody action on the ground that jurisdiction lay with the court in India. Quoting Maryland Code, § 9–206(a) of the Family Law Article (1999 Repl.Vol.) (FL), which was part of the Maryland version of the UCCJA, he averred that a Maryland court "shall not exercise its jurisdiction under [the UCCJA] if, at the time of filing the petition, a proceeding concerning the custody of the child was

pending in a court of another state exercising jurisdiction substantially in conformity with this subtitle, unless the proceeding is stayed by the court of the other state because this State is a more appropriate forum or for other reasons." Ms. Garg moved to strike that motion on the ground that Maryland really did have jurisdiction, notwithstanding the pending proceeding in India.

On May 2, 2003, before the court could rule on any of the pending jurisdictional issues, Ms. Garg asked the court to appoint independent counsel for the child, the cost to be "subsidized" by the court. The motion alleged a "credible fear" by Ms. Garg that Mr. Garg "will kidnap the minor child and abduct him to India," that "the health, safety and welfare of the minor child may be adversely affected if prompt action by the Court is not taken to protect the child," and that, due to the adversity of the proceedings, it was in the best interest of "the minor children" that "they" have counsel representing "their" interests. Mr. Garg opposed the motion, noting that (1) Ms. Garg had failed to substantiate in any way her allegations of possible abduction by Mr. Garg and that it was, in fact, she who had abducted the child from Indore, (2) a hearing on Mr. Garg's motions to dismiss for want of jurisdiction and to decline to exercise jurisdiction had been set for July 28, and (3) it would be premature, in light of the jurisdictional challenges, for the court to appoint independent counsel at that point.

On July 7, Judge Fader, who was to conduct (and later did conduct) the hearing on the jurisdictional issues, postponed that hearing, then set for July 28, and, in a memorandum to the Assignment Office, noted that "the Motion to Appoint Counsel for Minor Child (5/03/03) just sits until the attorney filing the motion complies with the procedural responsibility to have the matter directed to the Judge of the Family Division assigned to hear these motions regarding appointment of counsel on a rotating monthly basis as the Bar [h]as been so informed." [3] On July 23, he reset the hearing for September

3. Effective October 1, 2002, the Circuit Court *had* adopted an internal administrative policy of referring motions for the appointment of coun-

23, 2003. There were, at the time, some on-going discovery disputes, and counsel for Ms. Garg had advised the court that he needed to be out of the country for a period due to a family emergency. On September 3, 2003, Judge Dugan, who apparently was the designated Family Division judge to whom the motion was presented, issued the order that the Court of Special Appeals found so egregious—that the motion to appoint counsel "will be held in abeyance by the court until after [Judge Fader] rules on the issue of jurisdiction."

The hearing on the jurisdictional issues took place as scheduled, on September 23. By then, depositions and other discovery had taken place. At no time during that hearing did Ms. Garg ask for a ruling on her motion to have counsel appointed for the child (or any consequent continuance that granting the motion might entail); nor did she complain about Judge Dugan's order deferring a ruling on that request or even mention the matter. As a result, the motion was never taken up by Judge Fader or formally resolved, other than by the fact that no counsel was ever appointed.

The witnesses were Mr. and Ms. Garg, Ms. Garg's father and brother, and two experts in India law who gave partially conflicting opinions. Ms. Garg repeated her allegations of cruelty and abuse on the part of her husband and was vigorously cross-examined on that and other aspects of her testimony. The expert called by Mr. Garg stated that (1) it was proper for Mr. Garg to bring his action in India under the Guardians and Wards Act, which was the applicable statute,

---

sel for a child to a designated judge assigned to the Family Division of the court, rather than to the general chambers judge. That policy was communicated to the Bar in the November issue of the Baltimore County Bar Association newsletter. It does not appear, however, that *counsel* was required to present such a motion to the designated Family Division judge; rather, either the clerk's office, the assignment office, or some other administrative official would collect those motions, once filed and answered, and refer them to the designated judge. Judge Fader's memorandum was to the Assignment Office, and it may well have been in response to that memorandum that the motion was eventually referred to Judge Dugan, who was then assigned to the Family Division.

(2) the test under India law in a custody case is the best interest or welfare of the child standard, and (3) although there is a maternal preference under India law until the child is five, there is no preference—maternal or paternal—thereafter. She cited a 2001 case from the Supreme Court of India attesting that the standard in custody cases is the welfare of the child. The expert for Ms. Garg opined that the case in India should have been brought under the Hindu Minority and Guardianship Act, and that due process was not followed in the India proceeding. She agreed, however, that, for a child over five, there is no maternal or paternal preference under India law and that the controlling standard is the welfare of the child.

After considering the testimony and other evidence, the court announced from the bench that it was dismissing the action. As a predicate for some of its findings, the court made clear that it had little regard for Ms. Garg's credibility:

"I have looked at this lady and listened to her testimony. She is cool, she is calculating, she makes up her mind what she wants to say when she wants to say it and I believe—I don't believe her; I believe that most of the stuff she has made up to get her way."

The court expressed a similar view about the testimony of Ms. Garg's father.

The court recited seven reasons for its decision, all keying on the criteria stated in the UCCJA for a Maryland court to exercise jurisdiction:

First, the court stated that it was not convinced that there was abuse of any magnitude, other than a little pinching of the child, "because I do not accept her testimony or any of her witnesses' testimony to that effect."

Second, based on the limited agreement of the two experts, the court found that there was no maternal or paternal preference under India law with respect to Chaitanya, who was over five, and thus concluded that India law was not so far against Maryland public policy that the court would not enforce that law.

Third, the court observed that the India court believed it had jurisdiction, and "[f]rom what I see, the service aspects comport with due process of this country and, more importantly, an attorney has entered his appearance for her submitting the attorney and her to the jurisdiction of the Indian court." The court noted that when an attorney enters an appearance, there is a presumption that "he does represent the person he says that he represents," and that there was no testimony "to overcome that presumption that she has submitted herself to the jurisdiction of the Indian court and has in fact also been properly served there."

Fourth, again doubting Ms. Garg's credibility, Judge Fader announced that he was "not convinced that there is any neglect or failure by the father to support his child in India or to care for his child in India as has been testified to by the mother of the child."

Fifth, responding to Ms. Garg's testimony regarding her fear of her husband, the court stated that, if she did have that fear, "she has manufactured that fear herself based on a base of disappointment with the man she married and the man her father agreed she would marry," and that her alleged fear was "not based on any other facts."

Sixth, the court concluded as a matter of law that the UCCJA applied not only among the States of the United States, but to foreign countries as well. In that regard, it found that the father had filed suit in India to have the court there adjudicate the custody issue, but that "India never had a chance to because she spirited that child out of India for no reason." The court continued:

"And even though she indicates now that this country is the home state for six months or more and it is true that the child has been a resident of America for longer than six months, her spiriting the child away, her committing a fraud on the Court by removing the child means that that home state preference and designation is not to be given."

The Court further concluded, in this regard, that "everything before me indicates that India and their laws and the proce-

dure in the court was at least as good to adjudicate this matter as the Circuit Court for Baltimore County."

Finally, the court declared that it did not know Chaitanya's citizenship status, but that it was not a determining factor. The court assumed "that the Indian court will give that factor some consideration when it adjudicates this issue."

An order dismissing the case for the reasons stated by the court, a transcript of which was appended, was filed October 1, 2003. On October 9, Ms. Garg filed both a motion to alter or amend the judgment and a notice of appeal. The only basis for the motion to alter or amend was the request that, pending the appeal, the order dismissing the action be amended to continue in effect the temporary injunction issued in March, 2003, precluding Ms. Garg from removing Chaitanya from the State. That motion was denied.

On October 3, 2003, Mr. Garg filed a motion to charge Ms. Garg with travel expenses and attorneys' fees. He noted that, under the UCCJA (FL § 9–208(c)) (1999 Repl.Vol.), as it then existed before enactment of the UCCJEA, when a court dismissed a petition because the petitioner wrongfully took the child from another State or engaged in similar reprehensible conduct, the court may, in appropriate cases, charge the petitioner with necessary travel and other expenses, including attorneys' fees, incurred by other parties or their witnesses.[4] In his motion, he listed a number of expenses incurred for travel, discovery, and trial which, together with attorneys' fees, amounted to $5,314. Ms. Garg's principal response to the motion was that the request and evidence to support it should have been presented at the hearing, not afterward. Unimpressed with that defense, the court granted the motion and entered judgment against Ms. Garg for $5,314.

In her appeal to the Court of Special Appeals, Ms. Garg raised four issues: (1) did the Circuit Court err in applying the UCCJA in an international context where the foreign nation (India) had not issued an order or decree concerning

---

4. A similar provision is included in the UCCJEA as well. *See* FL § 9.5–208(c) (2004 Repl.Vol.).

custody; (2) did the court err substantively in dismissing the action in contravention of FL §§ 1–201(a)(5), 1–201(b)(1), and 2–503(d); (3) did the court err in dismissing her complaint for divorce for alleged insufficient service of process; [5] and (4) did the court abuse its discretion in awarding expenses and attorneys' fees. Nowhere in her brief is there any complaint about Judge Dugan's order deferring action on the motion for appointment of counsel for Chaitanya until resolution of the jurisdictional issues.

The Court of Special Appeals did not rule on any of the four issues raised by Ms. Garg. Instead, it determined that (1) the Circuit Court erred in dismissing the divorce action based on the case pending in the Indore court because the action in that court did not encompass a divorce, and (2) "fundamental fairness suggests" that Chaitanya "should have a lawyer to articulate his interest and to assist on the critical and complex issues that were determinative of his future." *Garg v. Garg, supra,* 163 Md.App. at 578, 881 A.2d at 1198. The deferral of the motion to appoint counsel, which, as noted, was not pressed at the ultimate hearing before Judge Fader, was thus regarded as an abuse of discretion amounting to legal error. In light of that determination, the appellate court vacated the entire judgment of the Circuit Court, including the award of expenses and attorneys' fees, and remanded for the court (1) to appoint counsel for the child, (2) to resolve the service of process issue, and (3) to revisit and resolve the jurisdictional issues under the UCCJEA.

We granted *certiorari* to review the rulings of the Court of Special Appeals and, save for the issues going to the divorce action, shall reverse the judgment of that court.

## DISCUSSION

FL § 1–202 provides that, in any action in which custody, visitation rights, or the amount of support of a minor child is

---

5. Ms. Garg did not assert that the Circuit Court had dismissed the divorce action on that ground, but merely pointed out that the Circuit Court had never ruled on that defense.

contested, "the court *may:* (1) appoint to represent the minor child counsel who may not represent any party to the action; and (2) impose against either or both parents counsel fees." (Emphasis added). Unquestionably, the statute merely *authorizes* a court to appoint counsel in those kinds of cases; it does not *mandate* such an appointment. The decision whether to appoint independent counsel for the child is a discretionary one, reviewable under the rather constricted standard of whether that discretion was abused.

We described that standard in *Jenkins v. State,* 375 Md. 284, 295–96, 825 A.2d 1008, 1015 (2003):

> "The abuse of discretion standard requires a trial judge to use his or her discretion soundly and the record must reflect the exercise of that discretion. Abuse occurs when a trial judge exercises discretion in an arbitrary or capricious manner or when he or she acts beyond the letter or reason of the law."

*See also Cooley v. State,* 385 Md. 165, 175, 867 A.2d 1065, 1071 (2005); *Kelly v. State,* 392 Md. 511, 898 A.2d 419 (2006).

 We are unable to discern anything even approaching an abuse of discretion on this record. As noted, the motion was never formally denied, but merely referred to the judge specially assigned to hear the case, or at least the question of whether the court had any jurisdiction, or should exercise jurisdiction, to hear the case. If Ms. Garg felt strongly enough about the need for independent counsel for Chaitanya, she could have pressed the point when she appeared before Judge Fader—asked him to rule upon the motion and, if necessary, grant a continuance in order for counsel to be appointed. There was no emergency; the child was with her and had been with her for over a year and Mr. Garg was under an injunction, which he showed no sign of disobeying, not to remove the child from Maryland. She did not press the point, however, but was instead content to have the hearing proceed without counsel for Chaitanya.[6]

_____

6. Mr. Garg has not argued that Ms. Garg waived her right to complain about Judge Dugan's order, and we shall not resolve the issue on that

Jurisdiction or its exercise under both the UCCJA and UCCJEA is a threshold legal issue that the law requires be resolved expeditiously. *See* FL § 9–223 (1999 Repl.Vol.) (UCCJA) ("on the request of a party to a custody proceeding that raises a question of existence or exercise of jurisdiction under this subtitle, the case shall be given calendar priority and handled expeditiously"); FL § 9.5–106 (2004 Repl.Vol.) (UCCJEA). Although the jurisdictional issues were, to a large extent, fact-driven, as they often are, they did not relate in any way to, much less determine, who should have custody of Chaitanya, what visitation should be allowed, or what was in the child's best interest.[7] The sole purpose of the hearing before Judge Fader was to determine which court should consider and resolve those issues. Given that both parents were ably represented by counsel of their choosing, the court obviously (though, in the light of Ms. Garg's disinclination to press the issue, tacitly) felt that it did not need another lawyer to weigh in on the purely legal issue of jurisdiction. It was

---

ground. In judging whether either Judge Dugan or Judge Fader abused his discretion in not appointing counsel, however, it is relevant to consider the lack of interest shown by Ms. Garg in more urgently pursuing the matter when she had the opportunity to do so.

7. There was some potential confusion regarding relevance of the best interest of the child in resolving jurisdiction under the UCCJA. FL § 9–204(a)(2) (1999 Repl.Vol.), in setting forth when a court has jurisdiction, stated as one of the factors whether "it is in the best interest of the child that a court of this State assume jurisdiction because (i) the child and the child's parents, or the child and at least 1 contestant, have a significant connection with this State, and (ii) there is available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships." In their prefatory note to the UCCJEA, however, the National Conference of Commissioners on Uniform State Laws, which drafted both the UCCJA and the UCCJEA, observed:

"The 'best interest' language in the jurisdictional sections of the UCCJA was not intended to be an invitation to address the merits of the custody issue in the jurisdictional determination or to otherwise provide that 'best interests' considerations should override jurisdictional determinations or to provide an additional jurisdictional basis."

To resolve any ambiguity on that point, the "best interests" language was deleted from the jurisdiction sections of the UCCJEA.

not unreasonable, much less arbitrary, capricious, or beyond the letter or reason of the law for the court to reach that conclusion.

■ Because the Court of Special Appeals erred in vacating the Circuit Court judgment upon its determination that the trial court was obliged to appoint counsel for Chaitanya, its judgment must be reversed and the case remanded for it to resolve the issues actually raised by Ms. Garg. In doing so, the intermediate appellate court must apply the UCCJA. It was in clear error in holding that the newly enacted UCCJEA applied. The UCCJEA was enacted by 2004 Md. Laws, ch. 502 and took effect October 1, 2004. Section 4 of the Act states expressly that "this Act applies only to cases filed to establish or modify custody or motions or other requests for relief filed in child custody cases on or after the effective date of this Act." By the plain terms of the statute, therefore, it does not apply to cases to establish custody filed before October 1, 2004, which Ms. Garg's action clearly was.

**JUDGMENT OF COURT OF SPECIAL APPEALS RE-VERSED; CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS IN CONFORMANCE WITH THIS OPINION; COSTS IN COURT OF SPECIAL APPEALS TO DATE AND COSTS IN THIS COURT TO BE PAID BY RESPONDENT.**

Judge RAKER joins in the judgment only.