911 A.2d 453

**Ronald Robert ALLEN**

v.

**STATE of Maryland.**

**No. 1805, Sept. Term, 2004.**

Court of Special Appeals of Maryland.

Nov. 30, 2006.

**546**

Allison M. Sayers (Nancy S. Forster, Public Defender, on brief), Baltimore, for appellant.

Devy P. Russell (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

Panel ADKINS, BARBERA and WOODWARD, JJ.

BARBERA, J.

This case involves the crime of what formerly was referred to as "unauthorized use" of an automobile. The offense has long been a part of Maryland's statutory criminal law, and for many years could be found at Maryland Code (1957, 1996 Repl.Vol.), Art. 27, § 349. In 2002, the General Assembly reworded and re-codified the offense, and it is now located at Maryland Code (2002), § 7–203 of the Criminal Law Article ("CL").

Unlike the lengthy description of the conduct prohibited by its predecessor statute,[1] CL § 7–203 is cast in relatively simple terms. The current law defines the prohibited conduct

---

1. Article 27, § 349 read in its entirety:

as follows: "Without the permission of the owner, a person may not enter or be on the premises of another, and take and carry away from the premises or out of the custody or use of the other, or the other's agent, or a governmental unit any property, including: (1) a vehicle; (2) a motor vehicle; (3) a vessel; or (4) livestock." CL § 7-203(a).[2] As we shall see, the changes to the statute are more than stylistic.

Ronald Robert Allen, appellant, was convicted of violating CL § 7-203. He presents on appeal the sole question of

---

Any person or persons, his or their aiders or abettors who shall enter, or being upon the premises of any other person, body corporate or politic in the State, shall, against the will and consent of said person or persons, body corporate or politic or their agents, take and carry away any horse, mare, colt, gelding, mule, ass, sheep, hog, ox or cow, or any carriage, wagon, buggy, cart, boat, craft, vessel, or any other vehicle including motor vehicle as defined in the laws of this State relating to such, or property whatsoever, or take and carry away out of the custody or use of any person or persons, body corporate or politic, or his or their agents, any of the above-enumerated property at whatsoever place the same may be found, shall upon conviction thereof in any of the courts of this State having criminal jurisdiction be adjudged guilty of a misdemeanor, and shall restore the property so taken and carried away, or, if unable so to do, shall pay to the owner or owners the full value thereof, and be fined not less than fifty nor more than one hundred dollars, or be imprisoned in the county or city jail, or the house of correction, for not less than six months nor more than four years, or be both fined and imprisoned as aforesaid, in the discretion of the court, although it may appear from the evidence that such person or persons, his or their aiders and abettors, took and carried away the property or any portion of the same enumerated in this section, for his or their present use, and not with the intent of appropriating or converting the same.

2. The remainder of CL § 7-203 provides:

(b) *Penalty.*—A person who violates this section is guilty of a misdemeanor and on conviction:

(1) is subject to imprisonment for not less than 6 months and not exceeding 4 years or a fine not less than $50 and not exceeding $100 or both; and

(2) shall restore the property taken and carried away in violation of this section or, if unable to restore the property, shall pay to the owner the full value of the property.

(c) *Prohibited defense.*—It is not a defense to this section that the person intends to hold or keep the property for the person's present use and not with the intent of appropriating or converting the property.

whether the State presented legally sufficient evidence to prove that he committed that crime. Arriving at the answer to that question requires construction of the language of CL § 7–203, which leads to the conclusion that the General Assembly, whether by design or not, substantively changed the law of unauthorized use. No longer does the offense have as one of two alternative means of committing it the mere unlawful removal of a motor vehicle from the custody of another. Now, the offense has as a required element that the accused have entered or been present on premises of another from which the property is taken or carried away (or custody or use of it works a deprivation to the other), without permission of the owner.

Allen was charged with violating CL § 7–203 for having been found in Maryland in possession of a motor vehicle that had been stolen a month earlier from a dealership in Fairfax County, Virginia. That undisputed fact exposes a question about the prosecution of this case that neither Allen nor the State recognized, but which we shall consider nonetheless, namely, where precisely did the crime occur, Virginia or Maryland? For the reasons we shall discuss, we conclude that the offense proscribed by CL § 7–203 is committed in Maryland if it can be proven that the accused possessed the property in Maryland, even if the property was unlawfully removed from premises located outside of Maryland. But, the State must also prove that the accused participated in the removal of the property from those premises.

In this case, the State's evidence demonstrated that Allen was found in exclusive possession of the stolen motor vehicle in Prince George's County, one month after it had been stolen from the Virginia dealership. By application of the principle that it can be inferred from the exclusive possession of recently stolen goods that the possessor is the thief, we hold that the evidence offered at Allen's trial is sufficient to support his conviction under CL § 7–203. We therefore affirm the judgment.

## FACTS AND PROCEEDINGS

During the early morning hours of October 28, 2003, several GMC Hummers were delivered from General Motors to Moore Cadillac, a car dealership in Vienna, Fairfax County, Virginia. The Hummers were parked in the dealership parking lot and the paperwork and keys for them were left in a night drop slot at the dealership. Each Hummer had two sets of keys, but the driver unloading the trucks notified the dealership that one set of keys was missing from one of the Hummers.

On November 5, 2003, someone sought to purchase the Hummer that had the missing set of keys. Employees of the dealership went to the lot to prepare the Hummer for sale, but could not locate it. The next day, the police were called and the Hummer was reported stolen.

On December 5, 2003, Officer Gerald Caver of the Prince George's County Police Department was on routine patrol on Marlboro Pike when he noticed a gray Hummer. He ran a computer check on the Hummer's license tag number to determine if the tags had been stolen. He learned that the tags were stolen, so he stopped the vehicle.

Allen was driving the Hummer. There were no other occupants. Officer Caver advised Allen that the tags were stolen. According to the officer, Allen responded that the vehicle was not stolen; it belonged to his brother. Officer Caver then ran the vehicle's identification number through the dispatcher and learned that the Hummer, too, was stolen. Officer Caver placed Allen under arrest. The missing set of keys was found inside the Hummer.

A Prince George's County grand jury handed down an indictment charging Allen in count one with felony theft, in violation of CL § 7–104; in count two with motor vehicle theft, in violation of CL § 7–105, in count three with "unauthorized use of motor vehicle," in violation of CL § 7–203; and in count four with misdemeanor theft (the license tags), in violation of CL § 7–104. At the outset of trial the State moved to amend count three to charge a violation of CL § 7–104(a), instead of

CL § 7–203. Allen objected and the court denied the motion on the ground that the proposed amendment was substantive.

In opening statement, the State told the jury that the Hummer was stolen from "Moore Cadillac Hummer dealership of Vienna, Fairfax County, Virginia." During its case-in-chief, the State introduced the articles of merger and agreement and plan of merger for the dealership, as well as the dealership's license, which presumably showed that the dealership was located in Virginia.[3] The State also offered the testimony of David Harris, the sales manager at Moore Cadillac, and Officer Caver, who recounted what we summarized above.

At the close of its case, the State *nol prossed* count four, misdemeanor theft. Allen moved for judgment of acquittal on the remaining counts. With regard to the count charging unauthorized use, Allen argued that the State failed to establish that he entered the dealership and took the Hummer away from those premises. Allen did not argue that the State lacked territorial jurisdiction to prosecute the offense. The court reserved ruling on the motion until the close of all of the evidence.

Allen and his mother testified in the defense case. Allen's mother testified that he was in Florida when the Hummer was stolen from the dealership. Allen, in turn, denied taking the Hummer from the dealership and denied knowing that it was stolen. He testified that the Hummer belonged to an acquaintance, Marcus Robinson, at whose home Allen had spent the previous night and who had given Allen permission to borrow the Hummer on the morning Officer Caver stopped him. Allen did not call Marcus Robinson to testify.

Allen re-raised the motion for judgment of acquittal at the end of all of the evidence. He repeated the arguments that he made at the end of the State's case, and again did not mention

---

**3.** Allen's appellate counsel moved to supplement the record on appeal with those documents. We granted the motion and ordered that the record be supplemented with the documents, but, for whatever reason, they were never transmitted from Prince George's County to this Court.

the court's lack of territorial jurisdiction. The court denied the motion.

The jury acquitted Allen of felony theft and theft of a motor vehicle and convicted him of unauthorized use. The court sentenced appellant to four years' imprisonment, all but 90 days suspended, with three years' probation upon release from incarceration. This appeal followed.

## DISCUSSION

Allen presents the sole complaint that the evidence was not legally sufficient to support his conviction under CL § 7–203. He maintains that, in its current form, the unauthorized use statute requires proof both that a person, without permission of the owner, entered or was present on the property where the motor vehicle (or other property) was taken, *and* that the person participated in the taking of such property from the premises or "out of the custody or use of another...." He claims that the State offered no evidence that he was present at the Virginia dealership and removed the Hummer from it. He also argues that the evidence falls short of establishing that he had the requisite knowledge that the Hummer was stolen. Appellant does not argue now, and, as we have mentioned, he did not argue at trial that the State lacked territorial jurisdiction to prosecute him for a violation of CL § 7–203.

The State responds that the evidence was legally sufficient to sustain the conviction. The State insists that it was only necessary to prove that Allen participated in the continued use of the Hummer under circumstances manifesting an intent to deprive the owner of possession of it. For that argument the State relies on case law concerning the crime of unauthorized use that pre-dates the enactment of CL § 7–203, which, as we shall discuss, is of little continued utility.

*"Unauthorized Use," as it once was*

The General Assembly's enactment of CL § 7–203 in 2002 was part of an effort to revise the Criminal Law Article, begun

in 1998 and completed in 2002 with the adoption of Chapter 26, Acts of 2002. The effect of the recodification of the unauthorized use statute to its current form is best understood by reviewing, first, the immediate predecessor to the current statute, Art. 27, § 349, as well as the cases construing it and its nearly identically worded predecessor, Maryland Code (1951), Art. 27, § 415.

The full history of the offense of unauthorized use has been thoroughly discussed in previous opinions of the Court of Appeals and this Court, *see In re Wallace W.,* 333 Md. 186, 634 A.2d 53 (1993); *In re Lakeysha P.,* 106 Md.App. 401, 665 A.2d 264 (1995), so we do not restate that discussion here. It is sufficient for present purposes to examine the text of former Art. 27, § 349, the pertinent part of which we set forth below:

> Any person or persons, his or their aiders or abettors who shall enter, or being upon the premises of any other person ... against the will and consent of said person or persons ..., take and carry away any ... motor vehicle ..., *or* take and carry away out of the custody or use of any person ... any of the above-enumerated property at whatsoever place the same may be found, shall upon conviction thereof ... be adjudged guilty of a misdemeanor....

(Emphasis added).[4]

Section 349 (and its predecessor, Art. 27, § 415) had four basic elements: (1) an unlawful taking; (2) an unlawful carrying away; (3) of certain designated personal property; (4) of another. *See In re Lakeysha P.,* 106 Md.App. at 411, 665 A.2d 264. Article 27, § 349, moreover, was written "in the disjunctive." *Thomas v. State,* 277 Md. 257, 269, 353 A.2d 240 (1976). The *Thomas* Court explained: "The offense can be established either by showing an entry [onto the premises of another] and a taking **or** by showing a taking of a vehicle [or other property designated in the statute] from wherever it may be located."

---

**4.** *See supra,* page 1, note 1, for the full text of § 349.

*See id.* (emphasis added). *See also Lakeysha P.,* 106 Md.App. at 410, 665 A.2d 264.

It was the second of those two means of prohibited conduct (the unlawful taking and carrying away of the custody or use of the property of another, from wherever that property might be located) that was at issue in a line of cases dating back at least to 1952. In those cases, the Court of Appeals and this Court upheld convictions of unauthorized use (whether under Art. 27, § 349 or Art. 27, § 415), based on evidence that the defendant did not participate in the taking of the property but did participate in the continued use of the property. *Anello v. State,* 201 Md. 164, 169, 93 A.2d 71 (1952), is at the head of that line of cases.

The Court of Appeals stated in *Anello* that the misdemeanor of unauthorized use (described at that time as "larceny by use") does not require that the offender or his aiders or abettors have the intent of appropriating or converting property taken. *Id.* at 167, 93 A.2d 71. Rather, the intent of the statute was to

> deprive the owner of his possession[, including] future possession[,] and is not limited, as in common-law larceny, to a taking out of present possession. Therefore, participation in the continued use of the car after the original taking would manifest an intent to deprive the owner of his possession during such participation.

*Id.* at 167–68, 93 A.2d 71.

The *Anello* Court upheld the unauthorized use conviction of a passenger in a stolen car because circumstantial evidence supported the conclusion that the passenger possessed the requisite criminal intent. *Id.* at 168–69, 93 A.2d 71.

Several reported decisions followed on the heels of *Anello.* In each, the Court of Appeals or this Court upheld a conviction for unauthorized use based on evidence that the appellant participated in the continued unauthorized use of property unlawfully taken, notwithstanding the lack of evidence that the appellant was responsible for the unlawful taking. *See e.g., Lee v. State,* 240 Md. 160, 162, 213 A.2d 503 (1965) (finding

that the evidence adduced at trial, which showed that the appellant was driving a stolen vehicle less than seven hours after the theft occurred, was sufficient to sustain the appellant's conviction of unauthorized use); *Spence v. State*, 224 Md. 17, 19, 165 A.2d 917 (1960) (affirming the appellant's conviction of unauthorized use on the grounds that he participated in the continued use of the stolen vehicle after the original taking); *Banks v. State*, 2 Md.App. 373, 376–77, 234 A.2d 798 (1967) (affirming the unauthorized use conviction of the appellant, who was a passenger in a stolen vehicle, despite the lack of direct evidence demonstrating that the appellant was responsible for the theft of the vehicle); *Johnson v. State*, 2 Md.App. 486, 491, 236 A.2d 41 (1967) (same). *See also In re Levon A.*, 124 Md.App. 103, 139, 720 A.2d 1232 (1998) (restating the *Anello* principle that one "who participates in the continued use of [a] stolen car after the original taking may be found to have committed the offense of unauthorized use") (internal quotation marks omitted).

We repeat that the line of cases cited above, and on which the State relies in the instant case, involved the second of the two alternative means of committing the then-prevailing crime of unauthorized use. Again, the second means of committing what used to be the crime of unauthorized use does not require a trespassory entry upon the premises of another and a taking from those premises, but rather, only a "showing [of] a taking of a vehicle *from wherever it may be located.*" *Thomas*, 277 Md. at 269, 353 A.2d 240 (emphasis added).

*The 2002 re-codification of the unauthorized use statute: a change in substance, or not?*

Bearing in mind the language and construction of the former versions of the unauthorized use statute, we turn our attention to the current statute, CL § 7–203. To date, no reported decision has construed CL § 7–203, so we shall do so here.

We must construe CL § 7–203 to discern the actual intent of the legislature in enacting it. *See Chow v. State*, 393

Md. 431, 443–44, 903 A.2d 388 (2006). We discern the legislature's intent by application of the usual rules of statutory construction. *See id.* Those rules require first and foremost an examination of the language of the statute itself, and, absent an ambiguity in the statutory text, we "will neither look beyond the words of the statute itself to determine legislative intent nor add to or delete words from the statute." *Stanley v. State,* 390 Md. 175, 182, 887 A.2d 1078 (2005). That is to say, " '[w]here the words of [the] statute, construed according to their common and everyday meaning, are clear and unambiguous and express a plain meaning,' the Court will give effect to the statute as the language is written." *Id.* at 184, 887 A.2d 1078 (quoting *Moore v. Miley,* 372 Md. 663, 677, 814 A.2d 557 (2003)); *see Price v. State,* 378 Md. 378, 387–88, 835 A.2d 1221 (2003).

The portion of CL § 7–203 at issue in this case is found in subsection (a), which states the prohibition: "Without the permission of the owner, a person may not enter or be on the premises of another, and take and carry away from the premises or out of the custody or use of the other, or the other's agent, or a governmental unit any property," including, among the enumerated types of property, a motor vehicle.

■ Of significance to the meaning of the section is the conjunction "and" between the two main clauses of CL § 7–203, the "presence on the premises clause" and the "taking and carrying away" clause. Use of the conjunction "and" makes plain that both presence on the premises of another, *and* taking and carrying away property are required elements of the offense.

In that respect, CL § 7–203 departs from its predecessors, Art. 27, § 349 and Art. 27, § 415, in both of which an unauthorized use could be committed by either of the two modalities we have discussed, "either by showing an entry [onto the premises of another without permission] and a taking **or** by showing a taking of a vehicle [or other designated property] from wherever it may be located." *Thomas v. State,* 277 Md. at 269, 353 A.2d 240 (emphasis added). The General

Assembly captured in the new statute the first modality of what formerly was unauthorized use, which required presence on the premises *and* a taking. But the legislature deleted from CL § 7–203 what formerly was the second modality by which an unauthorized use can be committed, requiring simply a taking from wherever the property might be located. By no reasonable reading of the current statute can it be concluded that the State must prove only an unlawful taking of property from wherever it may be located.

■ Further, because the statute is unambiguous, "there is no reason to consult legislative history as an aid to construing it." *Stanley*, 390 Md. at 185, 887 A.2d 1078. Indeed, although the legislative history of CL § 7–203 might shed light on a contrary intent, *Stanley* teaches that we may not look to that source for evidence that would suggest a meaning not expressed in the language. *See id.* at 182, 887 A.2d 1078.

■ In that regard, we may take no account of the Revisor's Note to CL § 7–203, which declares: "This section is new language derived *without substantive change* from former Art. 27, § 349." (Emphasis added.) The Court made clear in *Stanley* that a Revisor's Note has no bearing on the construction of a statute. *See* 390 Md. at 186, 887 A.2d 1078. After determining that the statute being construed in that case was plain on its face, the *Stanley* Court added:

> We also do not believe that the amendment of a statute, with an explanatory note[,] suffices to contradict the plain language of a statute. The amendment itself, because it must change that which was contradictory of the legislative intent, is proof of the contrary, that the statute actually did not mirror legislative intent. A revisor's note indicating that the change was made without substantive change does not change that fact.

*Id.; see also Price*, 378 Md. at 392, 835 A.2d 1221 (explaining that "a change to a statute cannot, regardless of what the Committee Note declares, be considered 'stylistic' if it removes one crime from an enumerated list and replaces it with another that requires different elements of proof").

Whether by design or not, the General Assembly worked a substantive change to what had been the law of unauthorized use when it enacted CL § 7–203. CL § 7–203 specifically requires both entry upon the premises of another and the unlawful taking and carrying away of certain property from the premises (or out of the custody or use of the other). By rewording the statute from its previous to its present form, the General Assembly has eliminated from the current statute the second, unlawful "taking [of property] from wherever it may be located" modality that at one time sufficed for committing unauthorized use. For that reason, *Anello* and its progeny, which provide judicial gloss on that now-defunct modality of committing the offense, are no longer applicable.

We hold that, absent proof that a defendant or a cohort entered or was present on the premises of another and unlawfully removed a vehicle (or other designated property) from the premises (or out of the custody or use of the owner or possessor), a conviction for unauthorized use under CL § 7–203 cannot stand.

### *Does Maryland have jurisdiction to prosecute Allen for violating CL § 7–203?*

We have said that, in this case, the State's evidence established that the Hummer was taken from a dealership in Fairfax County, Virginia, and found in appellant's possession in Prince George's County, Maryland, one month later. Therefore, two of the elements of CL § 7–203, presence on the premises of another and unlawful removal of property therefrom, took place outside of Maryland. That circumstance calls into question whether the crime occurred in Maryland or Virginia.

We ordinarily do not address questions that were not properly raised or decided at trial. *See* Md. Rule 8–131(a). Much less do we decide an appeal on the basis of a ground not presented in the parties' briefs. *See Garg v. Garg,* 393 Md. 225, 227–28, 900 A.2d 739 (2006).

Allen did not argue at trial and does not argue on appeal that Maryland lacked the authority to prosecute him for a violation of CL § 7–203. Instead, he simply argued then and reargues now that the evidence is legally insufficient to establish that he was on the premises of the Virginia dealership and removed the Hummer. Notwithstanding that Allen did not raise the question of territorial jurisdiction, we shall touch upon the matter. *See* Rule 8–131(a) ("The issues of jurisdiction of the trial court over the subject matter and, unless waived under Rule 2–322, over a person may be raised in and decided by the appellate court whether or not raised in and decided by the trial court."); *Lane v. State*, 348 Md. 272, 278, 703 A.2d 180 (1997) ("[W]hen [a] jurisdictional deficiency comes to light in either an appeal or a collateral attack on the judgment, [it] ought to be declared so."). *See also Bowen v. State*, 206 Md. 368, 374–75, 111 A.2d 844 (1955) (reaching the appellant's argument regarding territorial jurisdiction, which "involve[d] the subject matter of the case," even though the appellant had failed to preserve the argument for appellate review). For the reasons that follow, however, we conclude that Maryland had the power to prosecute appellant for violating CL § 7–203, because the Hummer was unlawfully "carried" into Maryland.

 The common law rule adhered to in Maryland is that "a state has territorial jurisdiction over a defendant when the crime is committed within the State's 'territorial limits.'" *Khalifa v. State*, 382 Md. 400, 421, 855 A.2d 1175 (2004). Consequently, in the ordinary case, " '[a] person cannot be convicted here for crimes committed in another state.'" *Id.* (quoting *West v. State*, 369 Md. 150, 158, 797 A.2d 1278 (2002)). The common law rule

does not permit prosecution of an offense in every jurisdiction in which any element of the offense takes place. Instead, the common law rule generally focuses on one element, which is deemed "essential" or "key" or "vital" or the "gravamen" of the offense, and the offense may be prosecuted only in a jurisdiction where that essential or key element takes place.

*Id.* at 422, 855 A.2d 1175 (quoting *West,* 369 Md. at 158–59, 797 A.2d 1278).

In *State v. Cain,* 360 Md. 205, 757 A.2d 142 (2000), the Court of Appeals considered whether Maryland courts had territorial jurisdiction to punish the accused for theft by deception. In that case, the Court stated that, " '[i]f the various elements of a given offense do not all occur within the borders of a single state, it becomes necessary to decide in which state the offense has been "committed." ' " *Id.* at 213–14, 757 A.2d 142 (quoting *Pennington v. State,* 308 Md. 727, 730, 521 A.2d 1216 (1987)). In so doing, the court looks to "one key act or omission" committed during the perpetration of the offense. *Id.* at 214, 757 A.2d 142.

Although the general rule is that a single element of the offense is, for territorial purposes, the essential element or gravamen of the offense, "there are a few exceptions to the single element territorial jurisdiction principle, and in some circumstances we have indicated that there may be more than one 'essential element' of an offense for purposes of territorial jurisdictional." *West,* 369 Md. at 161, 797 A.2d 1278; *accord Cain,* 360 Md. at 214, 757 A.2d 142 (acknowledging the view adopted by some courts in other states that "a crime may, for jurisdictional purposes, have several essential elements," and, in such cases, "if the requisite elements of the crime are committed in different jurisdictions, any state in which an essential part of the crime is committed, may take jurisdiction") (internal quotation marks and citation omitted).

The *West* Court had this to say about the issue:

Thus, in *Wright v. State,* [339 Md. 399, 663 A.2d 590 (1995)], the Court suggested that, with regard to theft based on larceny after trust, either the state where the conversion occurred or the state where there was a duty to account would have territorial jurisdiction. Furthermore, larceny may be prosecuted in any state into which the thief transports the stolen goods. *Pennington* [ ], 308 Md. at 730, n. 3, 521 A.2d 1216; *Worthington v. State,* 58 Md. 403, 409–410 (1882) (stating, with regard to larceny, that "at common law,

every asportation is a new taking"). Finally, with regard to certain offenses, "where causing a particular result constitutes an element of the offense" and "forms an essential ingredient of the offense," the state of the intended result may prosecute even if all of the other elements of the offense occurred elsewhere. *Pennington* [ ], 308 Md. at 733–34, 521 A.2d 1216.

*Id.* at 161, 797 A.2d 1278 (some citations omitted).

*Pennington* is particularly instructive. In that case, the Court of Appeals stated: "The general rule under the common law is that a state may punish only those crimes committed within its territorial limits." 308 Md. at 730, 521 A.2d 1216. The *Pennington* Court then noted the "widely recognized exception" to the rule, to which the *West* Court referred in the excerpt we quoted above, that "permits prosecution and punishment of larceny in any state into which the thief transports the stolen goods[,]" because, "[a]t common law, every such asportation is deemed to be a new taking." 308 Md. at 730, n. 3, 521 A.2d 1216. *See also* 1 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 4.4(a), at 297 (2d ed.2003) (stating that "[t]he weight of authority as to larceny is that the crime may be prosecuted, not only at the place where the goods are stolen (where the original taking and asportation take place) but also wherever the goods may be subsequently brought, on the theory that 'every asportation is a new taking' ").

Turning to the present case, we need not decide whether it is an essential element of CL § 7–203, for territorial jurisdictional purposes, that the accused enter or be present on the premises of another, because the unlawful "carrying away" element of the offense permits Maryland to assume jurisdiction under the principle that permits "prosecution and punishment of larceny in any state into which the thief transports the stolen goods." *Pennington,* 308 Md. at 730, 521 A.2d 1216. We of course recognize that CL § 7–203 is not the equivalent of common law larceny. Indeed, the offense does not have "any larceny-like mental requirement of an intent to deprive permanently," or, for that matter, an intent to deprive

temporarily. *See In re Lakeysha P.*, 106 Md.App. at 444, 665 A.2d 264 (emphasis removed). Nonetheless, CL § 7–203, like its predecessor unauthorized use statutes, has a core requirement of asportation of property unlawfully taken ("a person may not . . . take and carry away from the premises or out of the custody or use of the other . . ."). No Maryland case has called into question the continued vitality of the continuing larceny principle noted in *Pennington*.[5] We see no reason why that principle should not apply in this case.

In sum, Allen has not raised the lack of territorial jurisdiction to try him for violating CL § 7–203. Even had he raised such a challenge, it would have failed.

*Did the State establish a violation of CL § 7–203 by legally sufficient evidence?*

We have no difficulty concluding that the State presented evidence from which the jury rationally could find that Allen violated CL § 7–203. When reviewing a challenge to the sufficiency of the evidence in a jury trial, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Rivers v. State*, 393 Md. 569, 580, 903 A.2d 908 (2006) (citation and internal quotation marks omitted).

---

5. We examined, in particular, *Cain*, 360 Md. at 215, 757 A.2d 142 (holding that the essential element of the crime of theft by deception, at least for jurisdictional purposes, is the accused's "obtaining control of the subject property"); *Wright*, 339 Md. at 406, 663 A.2d 590 (observing that "jurisdiction over a theft offense exists in this state if the defendant was subject to a duty to account for the property within this state. . . . The duty to account will sustain jurisdiction only where such a duty is an essential component of the crime"); *Urciolo v. State*, 272 Md. 607, 638–40, 325 A.2d 878 (1974) (holding that Maryland had no jurisdiction over the embezzlement because, even though the intent to embezzle may have been formed in Maryland, there was no conversion or possession of the property in Maryland); *Bowen v. State*, 206 Md. at 375, 379, 111 A.2d 844 ("The essential element in the crime of larceny after trust is the conversion[,]" and, because the conversion occurred in the District of Columbia, Maryland had no jurisdiction in the case).

Allen makes two arguments in support of his claim of legal insufficiency. He argues that the State offered no evidence that he was present at the Virginia dealership and removed the Hummer from it. He also argues that the evidence did not establish that he had the requisite knowledge that the Hummer was stolen.

■ Allen is correct that the State offered no direct evidence that he removed the Hummer from the dealership. Yet, Maryland law recognizes that a jury may infer, from the unexplained possession of recently stolen goods, that the possessor is the thief. *See Painter v. State,* 157 Md.App. 1, 12, 848 A.2d 692 (2004).

Allen was found in the exclusive possession of the stolen Hummer and the set of missing keys within one month after the theft. And, upon being stopped by Officer Caver, he stated, without prompting, that the vehicle was not stolen and that it belonged to "his brother." Allen testified at trial, however, that he had borrowed the Hummer not from his brother, but from an acquaintance, one "Marcus Robinson." Allen did not call Mr. Robinson to testify.

■ The one-month lapse of time between the theft of the Hummer and Officer Caver's discovery of Allen driving it does not destroy the probative effect of the inference. " 'The term "recent," when used in connection with recently stolen goods, is a relative term, and its meaning as applied to a given case will vary with the circumstances of the case.' " *Cason v. State,* 230 Md. 356, 358, 187 A.2d 103 (1963) (quoting *Butz v. State,* 221 Md. 68, 77, 156 A.2d 423 (1959)). The Court of Appeals and this Court have held that the inference applies in cases in which there have been longer lapses of time between the theft of the property and its discovery in the defendant's possession. *See Cason,* 230 Md. at 358–59, 187 A.2d 103 (holding that "[t]he lapse of something over four months of time, under the circumstances of this case, was insufficient to destroy the probative effect that the trier of facts was entitled to give to the 'recent' possession of the stolen property by the accused, in the absence of a reasonable explanation of his possession");

*Wynn v. State,* 117 Md.App. 133, 170, 699 A.2d 512 (1997) (holding that the number and uniqueness of the items recovered from the appellant's home "allow the inference that appellant stole the items even though they were recovered ten months later"); *Jordan v. State,* 24 Md.App. 267, 275, 330 A.2d 496 (1975) (stating that this Court has "no difficulty in holding the [two] 10 month periods[, at the end of which stolen guns were recovered,] to be recent under the rule"); *Anglin v. State,* 1 Md.App. 85, 94, 227 A.2d 364, *cert. denied,* 246 Md. 755 (1967) (holding that a six month lapse between the theft of property and its discovery is not too great to apply the rule that recent possession of stolen goods is evidence of guilt).

■ The jury was permitted to discount Allen's explanation of his presence in the Hummer, in the face of all of the other evidence, and to infer from Allen's recent, exclusive possession of the Hummer that he was involved in removing the Hummer from the dealership. *See Boggs v. State,* 228 Md. 168, 172, 179 A.2d 338 (1962) (holding that the appellant's possession of stolen property, as well as his help in an attempt to dispose of it, gave rise to the inference that he was the thief and burglar); *St. Clair v. State,* 1 Md.App. 605, 621, 232 A.2d 565 (1967) (holding that the appellant's possession of stolen property justified the jury's inference of fact that he was the thief and burglar).

Allen's second argument, that the State presented no evidence that he had knowledge that the Hummer was stolen, readily fails, given the evidence that we have summarized. The evidence legally sufficed to support Allen's conviction of violating CL § 7–203.

**JUDGMENT AFFIRMED.**

**APPELLANT TO PAY THE COSTS.**